1  William D. Chapman, Bar No. 100535
2  Email : wchapman@caddenfuller.com
   A Member of CADDEN & FULLER LLP
3  114 Pacifica, Suite 450
   Irvine, California 92618-3326
4  Telephone: (949) 788-0827
5  Facsimile:  (949) 450-0650

6
   Attorneys for Tresóna Multimedia, LLC
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10  Tresóna Multimedia, LLC, an Arizona       No. _____
    limited liability company,
11

12            Plaintiff,                      **COMPLAINT FOR COPYRIGHT**
                                              **INFRINGEMENT**
13  v.

14  Burbank High School Vocal Music           **DEMAND FOR JURY TRIAL**
15  Association; Brett Carroll and John Doe
    Carroll, a married couple;  Ellie Stockwell
16  and John Doe Stockwell, a married couple;
17  Marianne Winters and John Doe Winters, a
    married couple; Geneva Tarandek and John
18  Doe Tarandek, a married couple; Lorna
19  Consoli and John Doe Consoli, a married
    couple; Charles Rodriguez and Jane Doe
20  Rodriguez, a married couple,
21

22            Defendants.

23
24      Plaintiff, for its Complaint against Defendants, states as follows:
25              **JURISDICTIONAL ALLEGATIONS**
26      1.      This is an action arising under the copyright laws of the United States, 17
    U.S.C. § 101 *et seq.*
27

28      2.      This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. §§ 1331 and 1338.

3.    Jurisdiction and venue are appropriate.

## GENERAL ALLEGATIONS

4.    Plaintiff Tresóna Multimedia, LLC, ("Tresóna") is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona.  Mark Greenburg ("Greenburg") is the manager of Tresóna.

5.    Defendant Burbank High School Vocal Association ("the Association") is a corporation that promotes extracurricular show choirs and show choir festivals.

6.    Defendants Brett Carroll and John "Doe" Carroll are residents of California.  Mr. Carroll is the director of the Association.  All actions by Mr. Carroll alleged herein were taken for the benefit of his marital community and on behalf of the Association.

7.    Defendants Ellie Stockwell and John "Doe" Stockwell are residents of California.  Ms. Stockwell is the President of the Association.

8.    Defendants Marianne Winters and John "Doe" Winters are residents of California.  Ms. Winters is the Vice President of the Association.

9.    Defendants Geneva Tarandek and John "Doe" Tarandek are residents of California.  Ms. Tarandek is the Secretary of the Association.

10.   Defendants Lorna Consoli and John "Doe" Consoli are residents of California.  Ms. Consoli is the Treasurer of the Association.

11.   Defendants Charles Rodriguez and Jane "Doe" Rodriguez are residents of California.  Mr. Rodriguez is the Trust Treasurer of the Association.

12.   The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as "Doe" are unknown to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff will amend this Complaint to state their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and on that basis alleges that each such

1  fictitiously named defendant is in some way responsible and liable for the acts
2  hereinafter alleged, that Plaintiff's damages were proximately caused by their conduct,
3  and/or each is subject to the relief being sought herein.

## BACKGROUND FACTS

**Background regarding applicable copyright law**

6      13.    When sheet music of a copyrighted music composition is created,
7  whether digital or physical, then a license from the rights holder(s) for that
8  composition must be obtained.  When such sheet music is created for the use of a
9  specific music ensemble, this type of license is commonly referred to as a "custom
10  arrangement license."

11      14.    When one uses a copyrighted musical composition/song or concert work
12  of any sort, combining it with choreography, costuming, and/or props, and creating a
13  dramatico-musical work, the license that must be obtained from the rights holder is
14  known as a "grand right license" (sometimes known as a "dramatic rights license").

15      15.    When copyrighted music is synchronized to a moving image and
16  recorded on film or video, a "synchronization license" must be obtained from the
17  rights holder(s).

18      16.    When copyrighted music is duplicated and distributed as an audio
19  recording, a "mechanical license" must be obtained from the rights holder(s).

**Background regarding Tresóna**

21      17.    Tresóna is an Arizona company that is able to issue several types of
22  copyright licenses on behalf of all major music publishing companies, and the great
23  majority of smaller publishing companies.  Tresóna issues custom arrangement
24  licenses, grand right licenses, synchronization licenses, and mechanical licenses.
25  Tresóna is the exclusive custom arrangement licensing agent for many publishing
26  companies.

27      18.    Tresóna's clients for custom arrangement licenses include bands, choirs,
28  schools, universities, and other organizations that need these licenses.

19.     Tresóna conducts its business using its website and its patent-pending technology.  Tresóna's online website is called the Licensing Exchange and is located at tresonamusic.com.  On Tresóna's Licensing Exchange, applicants may obtain custom arrangement licenses, grand right licenses, synchronization licenses, and mechanical licenses from copyright owners.  Those licenses allow applicants to legally create and perform custom arrangements, create and duplicate video recordings, create and duplicate audio recordings, and dramatically stage music for licensees.  Tresóna receives a portion of each license fee.

**Background regarding the Burbank Show Choirs**

20.     The Association operates, sponsors, and receives revenue from five show choirs (the "Burbank Show Choirs").  Their names are: In Sync, Out of the Blue, Sapphire, Impressions, and Sound Dogs.  The Burbank Show Choirs are some of the most prominent show choirs in the country.  In fact, it is widely understood in the industry that the television show "Glee" was based upon the Burbank Show Choirs, with input from Defendant Brett Carroll.

21.     The Burbank Show Choirs travel internationally to perform, and have performed at for-profit events promoted by professional corporations in Nashville and Canada.

22.     The Burbank Show Choirs hire professionally paid musicians, not students, to back the show choir members when they perform.

**Background regarding the Association**

23.     The Association is an organization that underwrites the operation of the Burbank Show Choirs.

24.     The Association promotes, sponsors, operates and receives revenue from festivals and competitions that involve the Burbank Show Choirs.

25.     The Association is a professional, extensively supported organization with revenues and expenses in the mid-six figures each year.

26.     The website for Burbank High School includes a page for the Association.  That page states:

> *We are home to 5 award winning show choirs (view descriptions below) and 2 acapella groups, with nearly 200 student vocalists ranging in skill level from beginner to advanced. Our choirs perform under the direction of Brett Carroll, with conceptual design and cutting edge musical arrangements by Josh Greene. We compete throughout southern California and the United States, and last year were featured guests at the Show Choir Canada National Show Choir Championships.*
>
> *We also perform several concerts a year at home, including our gala fundraising event Night of Magic, our musical Italian dinner concert Bucco di Burbank and our annual grand finale, Pop Show. If you'd like to see and hear our choirs in action, you'll find video and mp3 files of competition sets and concerts on the VMA website, and an extensive image collection here.*

27.     The Association maintains a separate website at bhsvocal.com.  It also has an alumni relations department and a coordinator in charge of publicity.

28.     Among the revenues obtained by the Association are gate receipts and participation fees for the various show choir festivals and events promoted by the Association, such as "The Night of Magic" and "The Burbank Blast Show Choir Festival" ("the Burbank Blast").  These events are sponsored annually by the Association and generate well over $100,000 in net income each year.

29.     From 2010 through 2014, the Association and the Burbank Show Choirs have staged more than 100 musical compositions and paid many hundreds of thousands of dollars for related costuming, choreography, travel, props, and so forth. However, as shown in more detail below, neither the Association nor the Burbank

Show Choirs obtained the legally required copyright licenses for their activities, despite being asked to do so many times over more than a year.

**Background regarding the individual Defendants**

30.     Defendant Brett Carroll is the Director of the five Burbank Show Choirs. He is on the staff of the Association and is the Director of "Camp Carroll," a summer camp funded by the Association.  Mr. Carroll is one of the most prominent show choir directors in the country.

31.     The Association's President is Ellie Stockwell, who is intimately aware of the Defendants' activities described above.  She is an administrative executive at an intellectual property and marketing firm.  She is aware that the Defendants' activities violate copyright law and has directed, permitted and/or encouraged these infringing activities.

**Defendants make and spend a lot on their show choirs—but they refuse to get required copyright licenses.**

32.     The Association manages and coordinates significant expenditures related to the Burbank Show Choirs.  The expenses incurred by the Association during the 2014-15 school year include, for example:

- $198,000 for outside choir services;
- $89,000 on travel expenses for their competition choirs.
- $65,484 for equipment needed for their competitive choirs.
- $35,900 for custom arrangements, including $20,750 to Josh Greene;
- $25,000 for lighting; and
- $98,910 for costumes.

33.     Despite these large expenditures to other vendors, Defendants have refused to pay for copyright licenses that are required for the operations of the Burbank Show Choirs.

34.     In fact, none of the Defendants has ever once obtained a single custom arrangement license for any of the custom arrangements they have helped create, commission, record and disseminate related to the Burbank Show Choirs.

35.     Similarly, none of the Defendants has ever paid any songwriter or rights holder a single dollar for the custom arrangements that Defendants created, commissioned, recorded and disseminated related to the Burbank Show Choirs—even though those custom arrangements are based on the music created by the various songwriters and/or rights holders.

36.     Similarly, none of the Defendants has ever obtained a single synchronization license for any audio-visual recording ever made of the Burbank Show Choirs.

37.     Similarly, none of the Defendants has ever obtained a single synchronization license for the hundreds of audio-visual recordings made of the many show choirs who have participated in the Burbank Blast.

38.     Similarly, none of the Defendants has ever obtained a single grand right license for any performance by the Burbank Show Choirs.

39.     Similarly, none of the Defendants has ever obtained a single grand right license for the hundreds of show choir performances given by the many show choirs who have participated in the Burbank Blast.

40.     From 2010 through 2015, music arranger Josh Greene duplicated audio recordings of his arrangements and sent them to Defendant Carroll at Mr. Carroll's direction.  Mr. Carroll then further disseminated the arrangements to his choir members without obtaining the required mechanical license.  No other Defendant obtained the required mechanical license for these activities.

41.     Defendants authorized and/or directed that the videos made be posted on YouTube, and these videos can be viewed worldwide.  In addition, DVDs and access to videos were sold by the Association.  However, no Defendant obtained the required copyright licenses for any of these activities.

**Defendants' Infringement**

42.     From 2010 to 2016, Defendants have arranged or caused the arrangement, without license, of at least the compositions in the following table:

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|------|------------|--------------|-----------------|------------------|
| 2014 | 1999 | NPG MUSIC PUBLISHING | | |
| 2014 | (I've Had) The Time of My Life | PEN SONY/ATV WORLDSONG | * | |
| 2016 | A HAZY SHADE OF WINTER | MUSIC SALES CORP | * | |
| 2014 | AIRPLANES | UMPG WARNER | * | |
| 2015 | ALL ABOUT THE BENJAMINS | SONY/ATV EMI WARNER | * | |
| 2015 | ALL OR NOTHING | CURB WORDSPRING MUSIC | | * |
| 2013 | ALL THIS TIME | KOBALT SONY/ATV | * | |
| 2013 | AROUND THE WORLD | TUNECORE PUBLISHING | * | |
| 2014 | AT THE END OF THE DAY | WARNER | * | |

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|------|-----------|--------------|-----------------|------------------|
| 2016 | BEAUTIFUL NOW | BMG DOWNTOWN KOBALT TRI STAR SPORTS AND ENT | * | |
| 2016 | BEAUTIFUL THINGS | CAPITOL CMG | * | |
| 2016 | BEAUTY AND A BEAT | KOBALT UMPG | * | |
| 2014 | BEAUTY AND THE BEAST | WALT DISNEY MUSIC CO | * | |
| 2014 | BORN TO BE SOMEBODY | REALSONGS | | * |
| 2013 | BRAVE NEW WORLD | SONY/ATV WIXEN | * | |
| 2016 | CALENDAR GIRL | SONY/ATV EMI UMPG | * | |
| 2016 | CALIFORNIA GURLZ | KOBALT PULSE RECORDINGS SONY/ATV EMI UMPG WARNER | * | |
| 2013 | CLOSER TO THE EDGE | UMPG | * | |
| 2013 | CONQUEST | WARNER | | * |

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|------|-----------|--------------|-----------------|------------------|
| 2013 | COULD YOU BELIEVE | UMPG WARNER | * | |
| 2016 | DARK WALTZ | UMPG | * | |
| 2013 | DELILAH | SONY/ATV EMI | * | |
| 2013 | DON'T FORGET ME | WARNER | | * |
| 2013 | EDGE OF GLORY | SONY/ATV UMPG WARNER | * | |
| 2013 | EVERYBODY LOVES ME | KOBALT SONY/ATV | * | |
| 2013 | EXPRESS YOURSELF | UMPG WARNER | * | |
| 2014 | FAME (I'M GONNA LIVE FOREVER) | SONY/ATV EMI | * | |
| 2013 | FATHER FIGURE | WARNER | | * |
| 2016 | FROZEN | SONY/ATV EMI WARNER | * | |
| 2016 | GIRL FOR ALL SEASONS | BMG UMPG WARNER | * | |
| 2013 | GOOD LIFE | KOBALT SONY/ATV | * | |
| 2016 | GRAZING IN THE GRASS VOCAL | KOBALT | * | |

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|------|-----------|-------------|-----------------|------------------|
| 2013 | HAVE A LITTLE FAITH IN ME | UMPG | * | |
| 2014 | HEART'S ON FIRE | SONY/ATV EMI | * | |
| 2014 | HOLDING OUT FOR A HERO | SONY/ATV | * | |
| 2014 | HOT IN HERE | SONY/ATV EMI SWING T PUBLISHING UMPG | * | |
| 2013 | I LOVE ROCK N ROLL | KOBALT | * | |
| 2014 | I WANNA BE RICH | SONY/ATV | * | |
| 2015 | I WANT IT ALL | SONY/ATV EMI | * | |
| 2014 | IT WON'T BE LONG NOW (FROM 'IN THE HEIGHTS') | WILLIAMSON MUSIC CO.-A DIV. OF RODGERS AND HAMMERSTEIN | * | |
| 2015 | KING OF PAIN | SONY/ATV EMI | * | |
| 2014 | KISS | NPG MUSIC PUBLISHING | | |
| 2014 | KISS THE GIRL | WALT DISNEY MUSIC CO | * | |
| 2014 | LET IT GO | WALT DISNEY MUSIC CO | * | |

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|------|-----------|--------------|-----------------|------------------|
| 2014 | LET'S GO CRAZY | NPG MUSIC PUBLISHING UMPG | | |
| 2015 | LIFE AND DEATH | BMG | * | |
| 2013 | LIGHTS | BMG DOWNTOWN SONY/ATV | * | |
| 2013 | LOST | UMPG | * | |
| 2013 | LOVE IS A BATTLEFIELD | MUSIC AND MEDIA UMPG | * | |
| 2014 | LOVE STORY | SONY/ATV | * | |
| 2011 | MAGIC | PEN | * | |
| 2014 | MANIAC | SONY/ATV EMI WARNER | * | |
| 2015 | MONEY MAKES THE WORLD GO ROUND (FROM 'CABARET') | CARLIN | * | |
| 2014 | MONTAGE | SONY/ATV | * | |
| 2016 | MY LOVIN' | SONY/ATV EMI | * | |

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|------|-----------|--------------|-----------------|------------------|
| 2015 | NATALIE | BMG KOBALT SONY/ATV EMI UMPG WARNER | * | |
| 2014 | ON BROADWAY | SONY/ATV EMI | * | |
| 2013 | ONE NIGHT IN BANGKOK | UMPG | * | |
| 2016 | OPERA SINGER | WIXEN | | * |
| 2014 | OWN IT | BMG | * | |
| 2015 | REEL ME IN | UMPG | * | |
| 2014 | RHINESTONE COWBOY | WARNER | | * |
| 2014 | ROADIE | KOBALT | * | |
| 2013 | ROLL THE DICE | WALT DISNEY MUSIC COMPANY | * | |
| 2014 | ROYALS | SONGS MUSIC PUBLISHING SONY/ATV EMI | * | |
| 2013 | SAVE THE WORLD TONIGHT | BMG KOBALT UMPG | * | |
| 2014 | SO THIS IS LOVE | WALT DISNEY MUSIC CO | * | |

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|------|-----------|--------------|-----------------|------------------|
| 2016 | SOAK UP THE SUN | OLE MEDIA MGMT RESERVOIR | * | |
| 2014 | SOME ENCHANTED EVENING (FROM 'SOUTH PACIFIC') | WILLIAMSON MUSIC CO.-A DIV. OF RODGERS AND HAMMERSTEIN | * | |
| 2015 | SOMETHING TO BELIEVE IN | UMPG | * | |
| 2013 | THE CATALYST | UMPG | * | |
| 2014 | THE FRESH PRINCE OF BEL-AIR | UMPG | * | |
| 2014 | The Lonely Goatherd | WILLIAMSON MUSIC CO.-A DIV. OF RODGERS AND HAMMERSTEIN | * | |

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|------|-----------|-------------|-----------------|------------------|
| 2013 | THE OTHER SIDE | BMG DOWNTOWN KOBALT SONY/ATV UMPG WARNER WIXEN | * | |
| 2014 | THE QUEEN | SONY/ATV WARNER | * | |
| 2014 | The Touch | SONY/ATV | * | |
| 2013 | THIS IS THE NIGHT | BMG WARNER | * | |
| 2016 | TIME OF THE SEASON | MARQUIS SONGS USA | | * |
| 2014 | TRUE TO YOUR HEART | WALT DISNEY MUSIC CO | * | |
| 2016 | TURN! TURN! TURN! (TO EVERTHING THERE IS A SEASON) | RICHMOND ORGANIZATION | * | |

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|---|---|---|---|---|
| 2015 | UPTOWN FUNK | BMG IMAGEM NEW SONGS ADMIN SONGS MUSIC PUBLISHING SONY/ATV UMPG WARNER | * | |
| 2013 | WAR AT HOME | BMG | * | |
| 2013 | WE GOT THE BEAT | UMPG | * | |
| 2014 | WHAT A FEELING | SONY/ATV WARNER | * | |
| 2014 | What I Was Born to Do | WARNER | | * |
| 2014 | WHAT MAKES YOU BEAUTIFUL | BMG KOBALT SONY/ATV EMI | * | |
| 2016 | WHEN AUTUMN COMES | BMG BRONX FLASH RESERVOIR WARNER | * | |
| 2014 | WHEN DOVES CRY | UMPG | | |
| 2014 | WHEN I GET MY NAME IN LIGHTS | WARNER | | * |

| Year | Song title | Publisher(s) | Exclusive right | Permissive right |
|------|-----------|--------------|-----------------|------------------|
| 2016 | WHEN OCTOBER GOES | UMPG WARNER | * | |
| 2014 | WHOLE NEW WORLD, A (ALADDIN'S THEME) | WALT DISNEY MUSIC CO | * | |
| 2013 | WITHOUT YOU | SHAPIRO BERNSTEIN SONY/ATV EMI | * | |
| 2014 | YOU'VE GOT THE TOUCH | SONY/ATV | * | |
| | | | 79 | 10 |

43.     Other than the publisher, Tresóna is the only authorized issuer in the United States and Canada for the 79 infringed songs in the column entitled "Exclusive right" (the "Tresóna Exclusive Songs").

44.     Tresóna has a permissive but non-exclusive right to issue licenses for the 10 infringed songs in the column entitled "Permissive right" (the "Tresóna Permissive Songs").

45.     Tresóna discovered the infringements referenced above in approximately November 2014.

46.     If Defendants had obtained the required licenses for the Tresóna Exclusive Songs, those licenses would have had to be obtained through Tresóna's Licensing Exchange, and Tresóna would have received its licensing fee for those licenses.

47.     If Defendants had obtained the required licenses for the Tresóna Permissive Songs, there is a reasonable likelihood that some or all of those licenses

1   would have been obtained through Tresóna's Licensing Exchange, and Tresóna would

2   have received its licensing fee for those licenses.

3   **Brett Carroll's misinformation campaign to the show choir community**

4       48.    Defendant Brett Carroll has used his position of prominence in the show

5   choir community to encourage others not to get licensing that is required by copyright

6   law. For example, Mr. Carroll has told others that it is legal for a show choir to obtain

7   a mechanical license for a copyrighted composition, and then create a custom

8   arrangement and perform the custom-arranged composition publicly. That is untrue

9   because a mechanical license does not authorize that activity.

10      49.    Mr. Carroll has been informed many times, by Tresóna and others, that a

11  mechanical license does not grant the legal right to create a custom arrangement or

12  perform a custom-arranged composition publicly. However, Mr. Carroll, acting for

13  himself and the other Defendants, has ignored those repeated warnings.

14      50.    The infringement in which Mr. Carroll has been involved is egregious

15  and willful. He has knowingly given advice to others urging them to violate copyright

16  law.

17  **Tresóna's unsuccessful efforts to convince Defendants to pay for required**

18  **licenses.**

19      51.    Tresóna has been asking for Defendants to pay the required license fees

20  since December 2014. Tresóna has sent emails and letters to Defendant Carroll and

21  others affiliated with the Association in an attempt to address the issue of Defendants'

22  extensive infringement. In these communications, Greenburg identified himself as the

23  president of Tresóna and included Tresóna's Arizona address in the signature block.

24  In December 2014, Greenburg received a response from Michael Bertram, the

25  principal at Burbank High School, refusing to arrange for the purchase of custom

26  arrangement licenses. Mr. Bertram later emailed Greenburg in January 2015, stating

27  that he would not respond to any further emails from Tresóna.

28

52.    In January 2015, Mark Greenburg from Tresóna and Michael Eames, President of the Association of Independent Music Publishers and President of PEN Music Group, met with Dr. John Paramo.  Dr. Paramo is the assistant school superintendent affiliated with Burbank and had the power to stop the infringing activities referenced in this Complaint.  Mr. Paramo stated in the meeting that (1) it was an embarrassment that the necessary licensing fees had not been paid, (2) that he was familiar with copyright law because he had just completed his doctorate and had to be very careful about footnoting in his thesis, and (3) he would see that the appropriate license fees were paid and that Tresóna should send him a bill for those fees.  However, once Tresóna sent Mr. Paramo the requested bill, Defendants "lawyered up" and refused to pay anything.

53.    Because Tresóna has been trying for more than a year to convince Defendants to comply with copyright law, Defendants are well aware of the copyright issues addressed above.  Their former custom arranger, Josh Greene, is also aware of those issues and informed the defendants that he would not be able to make any further arrangements without obtaining the required custom arrangement licenses.  Therefore, Defendants used a different arranger in 2016 to create the illegal custom arrangements to be used by the Burbank Show Choirs.  Defendants have concealed the name of this arranger to everyone involved, including even their own choreographer.  Defendants' effort to conceal the name of the arranger helps confirm that Defendants knew they needed copyright licenses they did not have, and that Defendants wanted to conceal that fact.

54.    One rights holder who has not been paid as a result of Defendants' infringement is PEN Music Group, Inc. ("PEN Music").  PEN Music is a very small publisher that owns part of the infringed works "(I've Had) the Time of My Life" and "Magic."  PEN Music was started by Michael Eames above a garage in Laurel Canyon.  Mr. Eames runs PEN Music because he loves music and songwriting, and

1    when people like Defendants steal music such as "(I've Had) the Time of My Life"

2    and "Magic," it causes real hardship to PEN Music and Mr. Eames.

3        55.    Another rights holder who has not been paid is The Royalty Network, an

4    independent publisher whose employees strive to make sure the writers they publish

5    are able to make a living from their music.

6    **Infringement of "(I've Had) the Time of My Life"**

7        56.    "(I've Had) the Time of My Life" is registered with the U.S. Copyright

8    Office as registration number SR0000102306.

9        57.    Tresóna entered into an agreement with PEN Music effective September

10   1, 2010 ("PEN Licensing Agreement").

11       58.    In the PEN Licensing Agreement, PEN Music granted to Tresóna "the

12   exclusive, non-transferable right…to (i) issue Copyright Use Licenses to the

13   Classification of Trade for Publisher Compositions."  Under the PEN Licensing

14   Agreement, "Copyright Use Licenses" are defined as "Synchronization Licenses,

15   Custom Arrangement Licenses, Grand right licenses, [and] Dramatic Rights

16   Licenses."

17       59.    The works covered by the PEN Licensing Agreement include "(I've Had)

18   the Time of My Life."

19       60.    PEN granted Tresóna an exclusive right under 17 U.S.C. § 106 and

20   Tresóna has standing to bring this action.

21       61.    Defendants never obtained custom arrangement licenses, synchronization

22   licenses, mechanical licenses, or grand right licenses for use of "(I've Had) The Time

23   of My Life."

24       62.    The Burbank Show Choir "In Sync" gave at least six paid performances

25   of "(I've Had) the Time of My Life" during 2013-2014 without obtaining a custom

26   arrangement license, grand right license, synchronization license, or mechanical

27   license.  One of those paid performances was at the 2013-2014 Burbank Blast.  In fact,

28   Defendant Brett Carroll personally performed "(I've Had) The Time of My Life" on

stage with the Association during the 2013-2014 Burbank Blast without any copyright license to do so.

63.   Gate receipts for paid performances sponsored by the Association during 2013-2014 totaled about $230,858.

64.   Upon information and belief, infringing performances of "(I've Had) the Time of My Life" occurred at every paid performance sponsored by the Association during 2013-2014.

65.   The Association sponsored and promoted the events at which the infringing performances of "(I've Had) the Time of My Life" occurred.

66.   At the time the infringing performances of "(I've Had) the Time of My Life" occurred, all Defendants knew that the performances infringed the "(I've Had) the Time of My Life" copyright.

**Infringement of "Magic"**

67.   "Magic" is registered with the U.S. Copyright Office as registration number PAu000206407.

68.   The works covered by the PEN Licensing Agreement include "Magic."

69.   Defendants never obtained custom arrangement licenses, synchronization licenses, mechanical licenses, or grand right licenses for use of "Magic."

70.   The Burbank Show Choir "In Sync" gave at least seven paid performances of "Magic" during 2010-2011 without obtaining a custom arrangement license, grand right license, synchronization license, or mechanical license.  One of those paid performances was at the 2010-2011 Burbank Blast.

71.   Gate receipts for paid performances sponsored by the Association during 2013-2014 totaled about $186,000.

72.   Upon information and belief, infringing performances of "Magic" occurred at every paid performance sponsored by the Association during 2010-2011.

73.   The Association sponsored and promoted the events at which the infringing performances of "Magic" occurred.

74.    At the time the infringing performances of "Magic" occurred, all Defendants knew that the performances infringed the "Magic" copyright.

75.    Tresóna did not become aware of the infringing performances of "Magic" until November 2014.

**Defendants sponsored and got money from from copyright infringement by third parties at the Burbank Blast**

76.    Defendants knowingly permitted and obtained money from copyright infringement at the Burbank Blast.

77.    For several years, the Association charged an admission fee for people to see performances at the Burbank Blast.

78.    The gate receipts for the paid performances are significant.  For example, in the most recent school year for which figures are known, 2014-2015, the Association collected $215,799 related to the Burbank Blast and other paid concerts promoted and hosted by the Association.

79.     Though the Association received extensive revenues from operating the Burbank Blast, no Defendant ever obtained custom arrangement licenses, synchronization licenses, mechanical licenses, or grand right licenses for any of the performances that occurred at the Burbank Blast.

80.    Though the Association received extensive revenues from operating the Burbank Blast, no Defendant ever ensured that any participating choirs obtained custom arrangement licenses, synchronization licenses, mechanical licenses, or grand right licenses for any of the performances that occurred at the Burbank Blast.

81.    Though the Association received extensive revenues from operating the Burbank Blast, no Defendant ever advised any of the participating choirs that they should obtain, or even consider obtaining, custom arrangement licenses, synchronization licenses, mechanical licenses, or grand right licenses for any of the performances that occurred at the Burbank Blast.

82.    All Defendants knew that widespread copyright infringement occurred at the Burbank Blast, but encouraged and permitted it to happen to serve their own financial and other interests.

83.    Two Tresóna musical compositions were infringed at the Burbank Blast, as follows:

**"Don't Phunk with My Heart"**

84.    At the 2014-2015 Burbank Blast a Jon Burroughs High School show choir called Men at Work performed "Don't Phunk with My Heart."

85.    The Royalty Network is a rights holder for the song "Don't Phunk with My Heart," which is registered with the U.S. Copyright Office as registration number PA0001340072.

86.    Tresóna entered into an agreement with The Royalty Network on November 17, 2014 ("Royalty Network Licensing Agreement").

87.    The Royalty Network Licensing Agreement granted Tresóna "the exclusive, non-transferable right…to (i) issue Copyright Use Licenses to the Classification of Trade for Publisher Compositions."  Under the Royalty Network Licensing Agreement, "Copyright Use Licenses" is defined as "Synchronization Licenses, Custom Arrangement Licenses, Grand right licenses, [and] Dramatic Rights Licenses."

88.    The Royalty Network granted Tresóna an exclusive right under 17 U.S.C. § 106 for the infringement of "Don't Phunk with My Heart," and Tresóna has standing to bring this action.

**"Hotel California"**

89.    At the 2015-2016 Burbank Blast, a Jon Burroughs High School show choir called Powerhouse performed "Hotel California."

90.    PEN Music Group is a rights holder for the song "Hotel California," which is registered with the U.S. Copyright Office as registration number PA0000045103.

91.     The works covered by the PEN Licensing Agreement include "Hotel California."

92.     PEN Music Group granted Tresóna an exclusive right under 17 U.S.C. § 106 and Tresóna has standing to bring this action.

93.     All Defendants have vicarious and contributory liability related to the copyright infringements alleged below.

## CLAIMS FOR RELIEF

### COUNT ONE

### (COPYRIGHT INFRINGEMENT – Custom Arrangement Licenses)

### (All Defendants)

94.     Tresóna incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

95.     By failing to get required custom arrangement licenses, Defendants infringed Tresóna's copyrights in the songs "(I've Had) The Time of My Life" and "Magic" in violation of 17 U.S.C. § 501 *et seq.*

96.     Tresóna suffered damages as a result of that infringement.

### COUNT TWO

### (COPYRIGHT INFRINGEMENT – Synchronization Licenses)

### (All Defendants)

97.     Tresóna incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

98.     By failing to get required synchronization licenses, Defendants infringed Tresóna's copyrights in the songs "(I've Had) The Time of My Life" and "Magic" in violation of 17 U.S.C. § 501 *et seq.*

99.     Tresóna suffered damages as a result of that infringement.

///

///

**COUNT THREE**

**(COPYRIGHT INFRINGEMENT – Grand right licenses)**

**(All Defendants)**

100.   Tresóna incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

101.   By failing to get required grand right licenses, Defendants infringed Tresóna's copyrights in the songs "Don't Phunk with My Heart," "Hotel California," "(I've Had) The Time of My Life" and "Magic" in violation of 17 U.S.C. § 501 *et seq.*

102.   Tresóna suffered damages as a result of that infringement.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Tresóna prays that the Court enter judgment against Defendants as follows:

A.   For an award of actual damages and all profits derived from the authorized use or, where applicable and at Tresóna's election, statutory damages pursuant to 17 U.S.C. § 504(c), which shall include statutory damages in an amount up to $150,000 per copyright infringement as a result of Defendants' willful infringement;

B.   That Defendants and their successors, agents, representatives, assigns, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of infringement;

C.   For compensatory, incident, and consequential damages in an amount to be proven at trial;

D.   For punitive damages in an amount to be proven at trial;

E.   For Tresóna's reasonable attorneys' fees and costs incurred pursuant to 17 U.S.C. § 505 and other law;

F.   For interest at the highest rate allowed by law from the earliest time permitted by law until the judgment is paid in full; and

1    G.    For such other and further relief as the Court deems just and proper.

2    DATED:  June 29, 2016                    CADDEN & FULLER, LLP

3

4

5                                            By:      /s/

6                                                  William D. Chapman

7                                                  Attorneys for Tresóna Multimedia, LLC

8

9

10                          **DEMAND FOR JURY TRIAL**

11       Plaintiff demands a trial by jury.

12   DATED:  June 29, 2016                    CADDEN & FULLER, LLP

13

14

15                                           By:      /s/

16                                                 William D. Chapman

17                                                 Attorneys for Tresóna Multimedia, LLC

18

19

20

21

22

23

24

25

26

27

28