| | |
|---|---|
| 1 | A. Eric Bjorgum (State Bar No. 198392)<br>Marc Karish (Bar No. 205440) |
| 2 | KARISH & BJORGUM, PC<br>119 E. Union St., Suite B |
| 3 | Pasadena, California  91103<br>Telephone: (213) 785-8070 |
| 4 | Facsimile:  (213) 995-5010<br>E-Mail:  eric.bjorgum@kb-ip.com |
| 5 | |
| 6 | Attorney for Defendants<br>BURBANK HIGH SCHOOL |
| 7 | VOCAL MUSIC ASSOCIATION *ET AL* |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tresóna Multimedia, LLC, an Arizona limited liability company,<br><br>              Plaintiff,<br><br>v.<br><br>Burbank High School Vocal Music Association; Brett Carroll and John Doe Carroll, a married couple; Ellie Stockwell and John Doe Stockwell, a married couple; Marianne Winters and John Doe Winters, a married couple; Geneva Tarandek and John Doe Tarandek, a married couple; Lorna Consoli and John Doe Consoli, a married couple; Charles Rodriguez and Jane doe Rodriguez, a married couple,<br><br>              Defendants. | Case No. 2:16-cv-04781<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS ELLIE STOCKWELL, MARIANNE WINTERS, GENEVA TARANDEK, LORNA CONSOLI, CHARLES RODRIGUEZ AND THEIR RESPECTIVE SPOUSES FOR SUMMARY JUDGMENT AS TO ALL CLAIMS AGAINST THEM PURSUANT TO FED. R. CIV. PROC. 56**<br><br>[Declarations of Willard Woods, Marianne Winters, Ellie Stockwell, Geneva Tarandek, Lorna Consoli, Charles Rodriguez, Ed Tarandek, Erin Rodriguez, Dan Winters, Mariano Perez and Eric Bjorgum, and [Proposed] Order filed concurrently herewith]<br><br>Judge: Hon. Stephen V. Wilson<br>Date:  January 9, 2017<br>Time: 1:30 pm.<br>Place: Courtroom 10A (1st St. Courthouse) |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on Monday, January 9, 2016 at 1:30 p.m., in Courtroom No. 10A, located at 350 W. First St., Defendants Ellie Stockwell, Marianne Winters, Geneva Tarandek, Lorna Consoli, Charles Rodriguez (the "Board Members") and related John and Jane Doe Defendants Ed Tarandek, Erin Rodriguez, Dan Winters and Mariano Perez ("Doe Defendants") will, and hereby do, move the Court for Summary Judgment as to all claims against them. The grounds for this Motion are:

1. Immunity of the Board Members and their spouses under the Volunteer Protection Act, 42 U.S.C § 14501 *et seq.*;
2. Immunity of the Board Members and their spouses under California state law, CAL. CORP. CODE §§ 5047.5, 5231 and 5233; and
3. There are no facts at all connecting the spouses to the allegations in this case.

The moving Defendants therefore request that judgment be entered in their favor accordingly.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of A. Eric Bjorgum, the Declaration of Willard Woods, the Declarations of Ellie Stockwell, Geneva Tarandek, Lorna Consoli, Charles Rodriguez, Marianne Winters and their respective spouses, the Separate Statement of Undisputed Facts, the Proposed Order, concurrently herewith, and all other papers, documents or exhibits on file or to be filed in this action, and the argument to be made at the hearing on this motion.

Pursuant to Local Rule 7-3, this motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 2, 2016 and October 31, 2016.

DATED: December 12, 2016         KARISH & BJORGUM, PC

By: __/s/_____
    A. Eric Bjorgum
Attorneys for Defendant Movants Ellie Stockwell, Marianne Winters, Lorna Consoli, Geneva Tarandek, Charles Rodriguez and their respective spouses

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................... 1

II.   BACKGROUND ....................................................................................... 2

   A.   The Board Members Are Immune to Claims For Liability Pursuant to the Federal Volunteer Protection Act, 42 U.S.C. § 14501 *et seq.* ........................................................................................ 5

   B.   The Named Defendants Are Immune to Claims For Liability Pursuant to California Nonprofit Corporation Law, Cal Corp. Code §§ 5047.5, 5231 and 5239 ......................................................... 9

   C.   All Claims Against The Doe Defendants Lack Factual Nexus to the Claims and Should be Dismissed ..................................................... 11

III.  CONCLUSION ....................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ..................................... 4

*Armendarez v. Glendale youth Ctr., Inc.*, 265 F. Supp. 2d 1136, 1141 (D. Ariz. 2003) .................................................................................................. 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..................................... 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1990) ......................................................... 4

*Gates v. Asset Acceptance, LLC*, F. Supp. 2d 1044 (S.D. Cal. 2011) ....................... 4

*Imperiale v. Pierce County*, 37 F.3d 1505 (table), WL 526967, at *2 (9th Cir. 1994) ........................................................................................................ 4

*Lomando v. United States*, 667 F.3d 363, 370 (3d Cir. 2011) .................................. 6

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099 (9th Cir. 2000) ........................................................................................................ 4

*Nunez v. Duncan*, WL 1274402, at *2 (D. Or. June 9, 2004) ................................. 6

*Scott v. Harris*, 550 U.S. 372, 380 (2007) ............................................................... 5

*Segway, Inc. v. Special Olympics Conn., Inc.*, 2015 WL 1244509, at *7-8 (Conn. Super. Feb. 23, 2015) ................................................................... 6

*Shroyer v. New Singular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) ...................................................................................................... 11

*Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) ................................. 11

*Soremekun v. Thrifty Payless*, 509 F.3d 978, 984 (9th Cir. 2007) .......................... 4

*Waschle v. Winter Sports Inc.*, 127 F. Supp. 3d 1090 (D. Mont. 2015) ............... 5, 6

*World Chess Museum, Inc. v. World Chess Fed'n, Inc.*, WL 5663091, at *2 (D. Nev. Oct. 15, 2013) .................................................................................. 6

*Zanzucchi v. Wynberg*, 933 F.2d 1018 (9th Cir. 1991) ............................................ 4

**Rules**

Fed.R.Civ.P. 56(c) .................................................................................................... 4

Fed.R.Civ.P. 56(e) .................................................................................................... 4

Fed.R.Civ.P. 56(e)(1) ............................................................................................... 4

**Statutes**

18 U.S.C. § 2331 ....................................................................................................... 7

26 U.S.C. § 501(c)(3) ............................................................................................... 6

28 U.S.C. § 534 ......................................................................................................... 7

42 U.S.C. § 14501 .................................................................................................. 5, 6

42 U.S.C. § 14501(b) ............................................................................................... 5

42 U.S.C. § 14502(a) ............................................................................................... 9

42 U.S.C. § 14503 .................................................................................................... 5

| | |
|---|---|
| 42 U.S.C. § 14503(a)(3) | 7 |
| 42 U.S.C. § 14503(f) | 7 |
| 42 U.S.C. § 14505(4)(A) | 6 |
| 42 U.S.C. § 14505(6) | 6 |

**Other Authorities**

| | |
|---|---|
| Cal. Corp. Code §§ 5047.5, 5231 and 5237 | 2 |
| Cal. Corp. Code §§ 5047.5, 5231 and 5239 | 9 |
| Cal. Corp. Code §§ 5047.5(e) and 5239(a)(4) | 10 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Tresóna Multimedia, LLC ("Plaintiff") brought this copyright infringement action against the Burbank High School Music Association Boosters Club (the "Boosters Club") and its *volunteer* board of directors *and their spouses*, claiming copyright infringement of derivative rights for failure to obtain "custom arrangement licenses" and so-called "grand rights" for songs performed by a high school choir in a public school. As noted, Plaintiff has also brought claims against the individually named officers and directors of the Boosters Club – parents who give time to the Boosters Club on a volunteer basis (the "Board Members"). Leaving no stone unturned, Plaintiff has also named the Board Members' spouses, identified only as "Doe Defendants" for Plaintiff's lack of knowledge as to their names or even existence. As a result of the high school show choir performances, Plaintiff seeks well over $300,000 in damages, plus unspecified punitive damages, presumably, to be paid by the Boosters Club, the school or the Board Members and their families.

The Board Members, Ellie Stockwell, Marianne Winters, Geneva Tarandek, Lorna Consoli and Charles Rodriguez[1] and their spouses seek summary judgment of all claims against them. First, there is no evidence as to the Board Members' individual involvement in the alleged copyright infringement. Plaintiff took the deposition of Ellie Stockwell, former President of the Boosters, and she confirmed both that copyright clearances were never handled by the Board of Directors, that she had no reason to seek such clearances before this dispute began, and that that none of the other Board Members would know more than her. Second, the Board Members are immune from legal liability on the basis of their volunteer status for a nonprofit organization. Per the Federal Volunteer Protection Act ("VPA") and

---

[1] The Doe Defendants, by virtue of their spouses' immunity, also summary judgment on all claims against them for lack of any factual connection to this action. See Section C *infra*.

1   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Case No: 2:16-cv-04781**

California Corporations Code §§ 5047.5, 5231 and 5237, the Board Members cannot be held liable for acts or omissions committed while acting within the scope of their duties as Board Members. The Complaint has not (and cannot) allege facts disputing this immunity, and therefore, the Board Members are entitled to judgment as a matter of law.

By this motion, the Board Members and their spouses seek an order granting judgment on the pleadings and/or summary judgment as to all claims against them.

## II.   BACKGROUND

The Burbank High School Vocal Music Association Boosters Club is a 501(c)(3) ("Boosters Club") not-for-profit entity that supports the Burbank High School Show Choirs.  (Separate Statement of Undisputed Facts ("SUF"), 1.)  Each show choir student performs songs at local shows and takes part in competitions involving other high school show choir programs. *See* Complaint, ¶ 26.   Plaintiff, Tresóna Multimedia, provides licenses to show choirs for "custom arrangements" (which apparently apply only to sheet music printouts), so-called "grand rights" and possibly other rights such as synch rights, though the Complaint is less than clear on the scope of Tresona's normal licensing activities.  Complaint, ¶ ¶ 13 – 16.

The moving Defendants here are all Board members of the Boosters Club or their spouses.  (SUF 2 – 7.)  They include: Ellie Stockwell, Charles Rodriguez, Lorna Consoli, Marianne Winters and Geneva Tarandek (collectively the "Board Members"). The Board Members did not discuss copyright clearance issues.  (SUF 10.)  There was no reason for the Board Members to be aware of the facts surrounding this matter before this dispute arose. (SUF 12.)  They only knew that arrangers of music were periodically paid. (SUF 13.)

The Board Members are volunteers.  (SUF 8.)  They received no compensation outside of reimbursements for routine expenditures, or anything of value in excess of $500 per year, in exchange for their work on the Board.  (SUF 9.)

1   Moreover, the Board Members' spouses have nothing to do with the facts
2   involving this case.  (SUF  15.)
3       Thus, regarding copyright, at her deposition, Ellie Stockwell (the Board
4   President at the time most relevant to this matter) testified as follows:

> Q   As a board member, were there ever any
> discussions at the Booster Club about the board's
> responsibility or the Booster Club's responsibility to
> make sure that the Burbank show choirs had the proper
> licensing?
>    A   No.
>    Q   Did anyone at the school, Mr. Carroll, or
> anyone else ever tell you that part of your
> responsibility was making sure that the show choirs had
> the proper copyright license?
>    A   No.
>    Q   Did you ever think that was part of your
> obligation?
>    A   No.
>    Q   Whose obligation did you believe that would
> be?
>     A   I have no idea.
>    MR. BJORGUM:  Objection, calls for
> speculation.  Assumes facts not in evidence.
>   BY MR. DENTON:
>    Q   Who decides which music numbers the show choirs
> performed?  Does the board have anything to do with
> that?
>    A   No.

(SUF 12, Stockwell depo. at 13:17 - 14:15;  Bjorgum Dec., Exh. A.)

Indeed, despite having no knowledge of copyright issues, Ms. Stockwell later testified that she had more knowledge of the present dispute than anyone else on the Board – particularly spouses.  Thus, Ms. Stockwell testified:

> Q   Did the spouses regularly attend board
> meetings?

>    A   They never attended a board meeting.
>    Q   Now, of all the board members, is there any other board member that would, to your knowledge, know anything more about copyright than you know?
>    A   No. For some reason I was on those initial emails, so I was the one who was disbursing all the information to them, so I would have the most knowledge.

(SUF 15, Stockwell depo. at 73:13 -- 73:22.) As will be shown, the facts establish that judgment should be granted for movants.

## STANDARD

Summary judgment is appropriate when there is no dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1990). When a properly supported motion for summary judgment has been presented, the adverse party "may not rest on the mere allegations or denials of its pleadings." Fed.R.Civ.P. 56(e). The non-moving party must set forth the "specific facts" demonstrating the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Only Admissible evidence can be considered at the summary judgment stage. Fed.R.Civ.P. 56(e)(1). Conclusory or speculative affidavits are not sufficient to raise a genuine issue of material fact. *Soremekun v. Thrifty Payless*, 509 F.3d 978, 984 (9th Cir. 2007).

Where the defendant is the moving party, the defendant can establish that a cause of action has no merit "by putting forth evidence that either one or more elements of the cause of action cannot be established or that a complete defense exists thereto." *Gates v. Asset Acceptance, LLC*, F. Supp. 2d 1044 (S.D. Cal. 2011) citing *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099 (9th Cir. 2000). Immunity represents a complete defense to a claim. *Zanzucchi v.*

*Wynberg*, 933 F.2d 1018 (9th Cir. 1991) (affirming a grant of summary judgment because defendant's immunity was a complete defense to the complaint); *Imperiale v. Pierce County*, 37 F.3d 1505 (table), WL 526967, at *2 (9th Cir. 1994) ("[t]he grant of qualified immunity to [defendant] represents a complete defense from suit"). "[W]hen the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Waschle v. Winter Sports Inc.*, 127 F. Supp. 3d 1090 (D. Mont. 2015), quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Defendants are immune from suit based on Federal and California State law, and therefore, there exists no issue of material fact. Defendants are entitled to summary judgment.

## ARGUMENT

### A. The Board Members Are Immune to Claims For Liability Pursuant to the Federal Volunteer Protection Act, 42 U.S.C. § 14501 *et seq.*

The Board Members are clearly immune from the allegations herein under the Federal Volunteer Protection Act. The Federal Volunteer Protection Act ("VPA") shields a volunteer of nonprofit organizations from legal liability while acting within the scope of his or her duties as a volunteer. *See* 42 U.S.C. § 14503 ("no volunteer of a nonprofit organization or governmental entity shall liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity . . . the volunteer was acting within the scope of the volunteer's responsibilities in the nonprofit organization or governmental entity at the time of the act or omission.").

Plaintiff's obscure claims of copyright infringement against a volunteer Board of Directors for a non-profit (supporting a public high school) clearly

implicate the VPA. Enactment of the VPA reflects the express purpose of Congress to "promote the interests of social service program beneficiaries and taxpayers . . . by reforming the laws to provide certain protections form liability abuses related to Board Members serving nonprofit organizations and governmental entities." 42 U.S.C. § 14501(b). A "volunteer" as defined by the VPA is an "individual performing services for a nonprofit organization or a governmental entity who does not receive (A) compensation (other than reasonable reimbursement or allowance for expenses actually incurred); or (B) any other thing of value in lieu of compensation, in excess of $500 per year, and such term includes a volunteer serving as a director, officer, trustee, or direct service volunteer." 42 U.S.C. § 14505(6); *Waschle v. Winter Sports Inc.*, 127 F. Supp. 3d 1090 (D. Mont. 2015) ("An individual generally qualifies as a 'volunteer' if he is not compensated.") citing *Segway, Inc. v. Special Olympics Conn., Inc.*, 2015 WL 1244509, at *7-8 (Conn. Super. Feb. 23, 2015) (holding no issue of material fact as to whether defendant was volunteer because he received no compensation). And a "nonprofit organization" is one "which is described in section 501(c)(3) of title 26 and exempt from tax under section 501(a) . . ." 42 U.S.C. § 14505(4)(A); *Waschle*, 127 F. Supp. 3d at 1096 (if an organization is organized under 26 U.S.C. § 501(c)(3) at the time of the alleged harm, there can be no dispute that the organization is a nonprofit).

The VPA creates for nonprofit volunteers a protection from suit that is "akin to immunity." *World Chess Museum, Inc. v. World Chess Fed'n, Inc.*, WL 5663091, at *2 (D. Nev. Oct. 15, 2013); *Armendarez v. Glendale youth Ctr., Inc.*, 265 F. Supp. 2d 1136, 1141 (D. Ariz. 2003) (volunteers within the meaning of the VPA are entitled to a "complete defense"); *Lomando v. United States*, 667 F.3d 363, 370 (3d Cir. 2011) ("[T]he VPA . . . grants *immunity* only to volunteers of nonprofit organizations.") (emphasis added); *Nunez v. Duncan*, WL 1274402, at *2 (D. Or. June 9, 2004) (granting judgment as a matter of law to volunteer defendant

"who is *immune* from liability to plaintiff under the provisions of 42 U.S.C. § 14501 *et seq*.") (emphasis added).

The VPA's immunity provision applies as long as the "harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer."[2] 42 U.S.C. § 14503(a)(3); *Waschle*, 127 F. Supp. 3d at 1097 (granting summary judgment where plaintiffs failed to support their conclusory and speculative statements regarding possible willful and wanton misconduct).

Here, the Board Members are parents of students associated with the Burbank High School music program. The Board Members are and were not compensated for their efforts, and they gave their time freely to assist the school program and its students. (SUF 8, 9.) Plaintiff has not produced or discovered any evidence that the Board Members were compensated or ever acted outside the scope of their duties.

All of the accompanying declarations support the conclusion that the Board Members are volunteers. This was reiterated by Ellie Stockwell at her depositions, where she testified (at Pages 52:23 to 53:1, Bjorgum Decl., Exh. A):

> A   Well, I'm always a volunteer.  I mean, even as
> a board member I'm a volunteer.  We don't get paid for
> any of this.  So we volunteer our time, and we all have
> full-times jobs and lives.

The Complaint does not allege (nor can it) that any of the Board Members ever acted outside the scope of their duties; the Complaint does not allege (nor can it) that any of the Board Members failed to act in good faith; the Complaint does not allege (nor can it) that any of the Board Members engaged in willful or criminal

---

[2] Other exceptions to the VPA could prevent recovery based on certain types of misconduct – e.g., crime of violence (18 U.S.C. § 16), international terrorism (18 U.S.C. § 2331), hate crime (28 U.S.C. § 534), or sex offense, civil rights violation, or while under the influence of alcohol or drugs (42 U.S.C. § 14503(f)) – all inapplicable here.

misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer. Indeed, the Complaint makes exactly zero allegations of any of the Board Members' conduct – and in discovery, Plaintiff had added nothing relevant to the equation.

Other than a recitation of the Board Members' purported positions as officers of the Burbank High School Vocal Association (Complaint ¶¶ 7-12), the Complaint is silent as to any alleged conduct on the part of the Board Members. The Complaint never even references the names of the individual Board Members in connection with the alleged actions of others, save one mention of Volunteer, Ms. Stockwell.[3]

However, as shown above, Ms. Stockwell testified that the Board Members did not address copyright issues. (SUF 12; Stockwell depo. at 13-17 – 14:15.) The closest they came was paying invoices for arrangers. (SUF 13.) Paying invoices was obviously within the normal scope and duties of the Board Members. There was nothing unusual about paying arrangers and no cause for the Board Members to question further whether special copyright licenses are needed. Indeed, quite the opposite – it could be argued that by paying arrangers, the copyright-novice Board Members assumed they were getting legal arrangements.

Thus, the accompanying declarations provide uncontradicted proof that the Board Members have not acted outside the scope of their volunteer positions. The Board Members were directors for a nonprofit booster club. (SUF 2 – 6.) The Board Members were not responsible for licensing. (SUF 10, 14.) But even if the Board Members knew of or had control over licensing issues, the Board Members (local parents lending their time to a nonprofit booster club for the public school)

---

[3] Plaintiff makes reference only to Brett Carroll (not subject to this Motion) and to Volunteer, Ellie Stockwell, in its "Background regarding the individual defendants." (Complaint ¶ 31). However, Plaintiff provides no factual basis for its allegations that Ms. Stockwell "is intimately aware of the Defendants' activities" or that she "permitted and/or encouraged these infringing activities." Id.

were not engaged in willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of any individual, as required by the statute to establish an exception to good faith liability.

Plaintiff's Complaint embodies exactly the kind of suit that Congress intended to nullify by enacting the VPA. The Board Members provide an invaluable service to the Burbank public school district by freely dedicating their time and efforts toward a booster club for the students' extra-curricular activities. The Board Members (and other parents like them in similar volunteer positions) should not be deterred from offering their services for fear of being dragged into and individually named in a lawsuit for copyright infringement.

**B.     The Board Members Are Immune to Claims For Liability Pursuant to California Nonprofit Corporation Law, Cal Corp. Code §§ 5047.5, 5231 and 5239**

The Board Members qualify for additional protections under California law. The VPA preempts any inconsistent state law, but not any law providing *additional* protection from liability for Board Members of a nonprofit organization. 42 U.S.C. § 14502(a). Three separate California laws provide additional protections akin to immunity for volunteer directors and officers at nonprofit corporations. *See* CAL. CORP. CODE §§ 5047.5, 5231 and 5239. Under Section 5047.5(b), "no cause of action for monetary damages shall arise against any person serving without compensation as a director or officer of a nonprofit corporation . . ." Like the VPA, Board Members are shielded from liability provided they acted within the scope of his or her duties as a director or officer, in good faith, in a manner that the volunteer believes to be in the best interest of the corporation, and is in the exercise of his or her policymaking judgment. *Id.*, at (b)(1) through (4). Section (c)(6) carves out a narrow exception for acts that are intentional, wanton, or reckless, gross-

negligence, or any action based on fraud, oppression, or malice.[4] Furthermore, Section 5047.5 limits its protections to Board Members of organizations that are exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code (5047.5(d)), and provided the nonprofit corporation maintains liability insurance (5047.5(e)).[5]

Similar to Section 5047.5, Section 5231(c) of the California Corporations Code shields volunteer directors from liability provided they "serve, in good faith, in a manner that director believes to be in the best interests of the corporation and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use in similar circumstances" per Section 5231(a). Section 5239 provides similar immunity to volunteer directors and executive officers based on any negligent act or omission. Section 5239 also calls for liability insurance (or the reasonable efforts to obtain liability insurance), and requires that the volunteer act within the scope of his or her duties, in good faith, and not in a reckless, wanton, intentional or grossly negligent manner. CAL. CORP. CODE § 5239(a)(1) through (4).

All three California statutes apply in this case and immunize the Board Members from liability in this action. It is undisputed that the Burbank High School Music Boosters Club is a nonprofit organization organized under Section 501(c)(3) of the Internal Revenue Code. (SUF 1.) The Board Members are all directors and/or officers of the booster club who provide their time and services without compensation. (SUF 9.) The Boosters Club maintains an insurance policy in accordance with Cal. Corp. Code. §§ 5047.5(e) and 5239(a)(4). (SUF 17.)

These are *parents who volunteer for a booster club that supports the*

---

[4] Section 5047.5(c)(1) through (7) limits liability of a director in other circumstances: self-dealing, conflicts of interest, taking distributions (per Section 5237), actions brought by beneficiary of a trust, or by the Attorney General, actions brought under Section 16700. All of these exceptions to liability are inapplicable here.

[5] If the corporation's annual budget is less than $50,000, the minimum required liability insurance amount is $500,000, and if the corporation's annual budget is greater than $50,000, the minimum required liability insurance amount is $1,000,000. See Section 5047.5(e)(1) and (2).

*children's high school show choirs*. If permitted to proceed with this action, Plaintiff will not uncover sinister behavior on the part of the Board Members, and Plaintiff can in no way amend its complaint to state a claim for which relief can be granted.

### C. All Claims Against The Doe Defendants Lack Factual Nexus to the Claims and Should be Dismissed

Plaintiff's perhaps most outrageous allegation contained in its Complaint is that the Volunteer Defendants' *spouses* are "*in some way* responsible and liable for the acts hereinafter alleged" and that "Plaintiff's damages were proximately caused by [the spouses] conduct, and/or each is subject to the relief being sought herein." (Complaint ¶ 12). Yet, glaringly absent from the Complaint is any factual allegation of misconduct by the Doe Defendants – indeed, the Doe Defendants are never mentioned again in the Complaint. *And discovery did not cure this deficiency.* Plaintiff's conclusory allegations are the very definition of a "formulaic recitation of the elements of a cause of action" subject to dismissal. *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a case "*must be dismissed*" if the complaint fails to allege facts sufficient to state a claim that is plausible on its face) (emphasis added); *Shroyer v. New Singular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (dismissal appropriate where complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim).

Not only are Plaintiff's allegations against the Doe Defendants speculative, they are lacking any factual basis whatsoever. First, Plaintiff never even bothered to amend its complaint to identify any individual spouse. Next, Defendants submit herewith declarations from each spouse stating that they had no involvement with the Boosters Club. (SUF 15, 16.) Finally, the deposition testimony of Stockwell again supports the conclusion in the Declarations. (SUF 15.)

The Board Members' spouses have no conceivable nexus to the allegations in

the Complaint. It is clear from even a cursory review of the Complaint and its lack of factual allegations that Plaintiff named the Board Members' spouses as defendants in an effort to scare the Board Members into submission. This is an entirely improper use of civil proceedings, and no matter what Plaintiff's motivation might be, all claims against the Doe Defendants should be dismissed with prejudice.

Finally, service of process on the "John/Jane Doe" spouses was non-existent or defective and shows that the action against them has been a sham since Day One. No proofs of service have been filed for personal service or execution of substitute service for "John Doe" Winters, "Jane Doe" Rodriguez, "John Doe" Consoli, "John Doe" Stockwell, or "John Doe" Tarandek. The docket entries misleadingly imply that such service was made, but the proofs themselves do not state that the spouses were served. (Docket Nos. 20, 21, 22, 23.) Moreover, the declaration of the process server for substitute service for defendant "John Doe" Stockwell is defective as although, server confirmed that the person physically served was the defendant's son, he did not confirm that the location was the dwelling house, usual place of abode, or usual mailing address of defendant "John Doe" Stockwell. (Docket No. 19.)

### III. CONCLUSION

For all of the foregoing reasons, summary judgment should be granted as to the all of the volunteer Board Members and their spouses.

DATED:  December 12, 2016            KARISH & BJORGUM, PC


By: /s/_____
     A. Eric Bjorgum
Attorneys for Defendant Movants Ellie Stockwell, Marianne Winters, Lorna Consoli, Geneva Tarandek, Charles Rodriguez and their respective spouses