A. ERIC BJORGUM (CA Bar No. 198392 )
MARC KARISH  (CA Bar No. 205440)
KARISH & BJORGUM PC
119 E. Union Street, Suite B
Pasadena, CA 91103
Phone: (213) 785-8070
Fax: (213) 995-5010
Email: eric.bjorgum@kb-ip.com

Attorney for Defendants
BURBANK HIGH SCHOOL
VOCAL MUSIC ASSOCIATION *ET AL*.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tresóna Multimedia, LLC, an Arizona limited liability company,<br><br>     Plaintiff,<br><br>v.<br><br>Burbank High School Vocal Music Association; Brett Carroll and John Doe Carroll, a married couple; Ellie Stockwell and John Doe Stockwell, a married couple; Marianne Winters and John Doe Winters, a married couple; Geneva Tarandek and John Doe Tarandek, a married couple; Lorna Consoli and John Doe Consoli, a married couple; Charles Rodriguez and Jane doe Rodriguez, a married couple,<br><br>Defendants. | Case No.:  2:16-cv-04781<br><br>**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 17 U.S.C. § 505**<br><br>**[Declaration of A. Eric Bjorgum; and Proposed Order filed concurrently]**<br><br>**[L.R. 54-12]**<br><br>JUDGE: Hon. Stephen V. Wilson<br>DATE:  August 14, 2017<br>TIME:  1:30 p.m.<br>PLACE:  350 W. 1st Street. Los Angeles<br>COURTROOM: 10A |

i

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 14, 2017, at 1:30 p.m., in Courtroom 10A of the First Street Courthouse, located at 350 W. 1st Street, Los Angeles, CA, 90012, Defendants Burbank High School Vocal Music Association ("Boosters Club"), Ellie Stockwell and John Doe Stockwell, a married couple; Marianne Winters and John Doe Winters, a married couple; Geneva Tarandek and John Doe Tarandek, a married couple; Lorna Consoli and John Doe Consoli, a married couple; Charles Rodriguez and Jane doe Rodriguez, a married couple (the "Volunteers" and the "Spouses") (collectively, "Defendants") will move the Court for an order awarding fees in the amount of $137,929.50 and costs (unrecoverable by a statutory bill of costs) in the amount of $10,693.79 as the prevailing party under the Copyright Act.  The Motion will be on the grounds set forth in these moving papers, the Declaration of Eric Bjorgum in support thereof, any reply papers, any oral argument, the record in this case, and any matters subject to judicial notice.

This Motion is filed following a meet and confer between counsel, pursuant to Local Rule 7-3, that took place on June 26, 2017.


Dated:   June 29, 2017            KARISH & BJORGUM, PC


                                 By: _/s/ Eric Bjorgum_____
                                 Attorneys for Defendants
                                 Burbank High School Vocal Music Association;
                                 Ellie Stockwell and John Doe Stockwell, a
                                 married couple; Marianne Winters and John Doe
                                 Winters, a married couple; Geneva Tarandek and
                                 John Doe Tarandek, a married couple; Lorna
                                 Consoli and John Doe Consoli, a married couple;
                                 Charles Rodriguez and Jane doe Rodriguez, a
                                 married couple.

**Cases**

*Kessler v. Assocs. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n. 1 (9th Cir. 1981) ........................ 14

*A.D. v. California Highway Patrol*, 712 F.3d 446, 460-461 (9th Cir. 2013) ......................................... 13

*Assessment Technlogies v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) ................................ 12

*Berkla v. Corel Corp.*, 302 F.3d 909, 924 (9th Cir. 2002) .................................................................... 8

*Boisson v. Banian Ltd.*, 280 F.Supp.2d 10, 20 (E.D.N.Y. 2003) ......................................................... 13

*Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ......................................................................... 5

*Cadkin v. Loose*, 569 F.3d 1142, 1147 (9th Cir. 2009) ..................................................................... 4, 5

*Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir. 1996) (*Fogerty III*) ............................................ 5

*Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir.1996) ................................................................... 6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 349-50, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ................................................................................................................................................. 10

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ........................................................ 5, 14

*Fogerty v. Fantasy,* 510 U.S. 517, 527 n. 19 (1994) (*Fogerty II*) ........................................................ 6

*Fractional Villas, Inc. v. Rodgers,* 2009 WL 1226982 *2 (S.D.Cal. 2009) ...................................... 5, 14

*Frost-Tsuji Architects v. Highway Inn, Inc.,* No. CV 13-00496 SOM/BMK, 2015 WL 5601853, at *5 (D. Haw. Sept. 23, 2015). ................................................................................................................. 11

*Garcia-Goyco v. Law Environmental Consultants*, 428 F.3d 14, 20 (1st Cir. 2005) .............................. 8

*Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992) ............................................................ 5, 15

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). .............................................................................. 7

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) ................................................... 13

*Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994) ........................................................................... 6

*Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1297 (S.D. Fla. 2015) ....................................................... 4

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir.1975) ............................................. 5, 13

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1987 (2016) ................................................ 12

*Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485 (9th Cir. 1984) .......................... 9

*Lieb v. Topstone Indus.,* 788 F.2d 151, 156 (3d Cir.1986) .................................................. 6, 9

*Mattel Inc. v. Walking Mtn. Productions,* 353 F.3d 792, 816 (9th Cir.2003) ......................... 12

*ngram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *In re Kekauoha-Alisa*, 674 F.3d 1083, 1094
   (9th Cir. 2012) ...................................................................................................... 13

*Nietzke v. Williams*, 490 U.S. 319, 325 (1989) ..................................................................... 8

*Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *11 (C.D. Cal.
   Mar. 24, 2015) ...................................................................................................... 10

*SOFA Entertainment, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) .................... 11

**Statutes**

17 U.S.C. § 505 ..................................................................................................... 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

If ever there were a copyright case that warranted granting fees to a prevailing Defendant, this is it.  As the Court may remember, this case involves allegations of copyright infringement regarding arrangements of four songs sung by the high school show choir at Burbank High School.  Plaintiff is a company in Arizona that aggregates and administers the rights to such "custom arrangement licenses," selling most of these licenses to school choirs and bands.  Plaintiff sued the Burbank High School Vocal Music Association Boosters Club, a section 501(c)(3) non-profit organization (the "Boosters"), the Boosters volunteer Board of Directors (the "Board"), and the board members' spouses (the "Spouses") (collectively these are the moving Defendants and will be referred to herein as the "Volunteers").  Plaintiff also sued Brett Carroll, the school district employee who works with the choirs.

Plaintiff initially filed this case in Arizona, joining the infringement claim with a tort claim for interference with contract, on the novel theory that copyright infringement interferes with its business.  The parties moved to dismiss or transfer, and Plaintiff then dismissed its case but re-filed the infringement case in this District.  Amazingly, Plaintiff also re-filed the interference claim in Arizona State Court—including against the Spouses—despite briefing and extensive declarations explaining that many of the individual defendants had no ties whatsoever to Arizona.  Plaintiff eventually lost the Arizona case on a motion to dismiss for lack of personal jurisdiction.

In August 2016, this Court set trial in this matter for February 2017, and all of Plaintiff's claims were defeated in successive motions for summary judgment by Carroll, the Board and Spouses, and finally the Boosters.  Having defeated Plaintiff's multiple claims of copyright infringement the Volunteers now move this Court for an award of attorneys' fees under 17 U.S.C. § 505 in the amount of $137,929.50 and unrecoverable costs in the amount of $10,693.79

## II.   FACTS

A.   <u>The Arizona Case.</u>  In its attempted opening salvo, Plaintiff filed this action in the District of Arizona, and, with a novel approach to copyright preemption, joined a claim for intentional interference with prospective economic advantage on the theory that the Boosters and their Spouses interfered because copyright infringement interferes with Plaintiff's business model.  Defendants filed a motion to transfer or to dismiss for improper forum, and Plaintiff voluntarily dismissed that case, only to refile the copyright action in this District.  Further, Plaintiff *refiled* the state tort action in Arizona state Court – including against the Boosters and their Spouses, several of whom had already submitted declarations in the first action alleging no significant contacts with the State of Arizona. The Arizona court eventually dismissed the state case for lack of personal jurisdiction.  (Declaration of Eric Bjorgum in Support of Defendants' Motion for Attorneys' Fees ("Bjorgum Decl."), Ex. A, Superior Court of Arizona Maricopa County, Under Advisement Ruling dated Jan. 27, 2017, at 3.)

At the invitation of the Arizona state court, Defendants immediately brought a motion for their fees and costs under FRCP 40 because Plaintiff had dismissed and re-filed the same claim, but the Court denied Defendants' motion.  However, the stage was set, and Plaintiff was put on notice that it would eventually be held accountable for its tactics.

B.   <u>The Central District of California Case.</u>  On August 22, 2016, this Court set the trial for February 7, 2017.  Defendants then methodically dismantled Plaintiff's entire case.  After one round of depositions and discovery, Defendant Brett Carroll filed a motion for summary judgment in November 2016, and on December 22, the Court granted that motion for Carroll on the grounds of qualified immunity, while also finding that Plaintiff lacked standing on three of the songs, so that only one song ("Magic") remained in the case.  (Dkt. No. 135.)  "Magic" was performed in the 2010-2011 choir season.

On December 12, 2016, the Volunteer Defendants moved for summary judgment on the basis of statutory immunity for volunteers of non-profits.  Following the granting of the prior motion, the Court asked for briefing on whether the Volunteer Defendants were liable for events occurring in 2010-2011, and it held they were not.  (Dkt. No. 177.)  The only remaining defendant in the case at that point was the non-profit association Boosters that also filed a motion for summary judgment based on fair use and Plaintiff's inability to prove liability for contributory or vicarious infringement.  Indeed, during the time of briefing, the Boosters offered a walkaway to Plaintiff, and that offer was refused, forcing the parties to continue with litigation.

Meanwhile, as will be discussed in greater detail in Brett Carroll's fee motion, Plaintiff displayed excessive vitriol towards Mr. Carroll by sending text messages obtained in discovery to the School Board, which resulted in Mr. Carroll being placed on administrative leave.

Because of the early February trial schedule, the parties were required to prepare for trial before the final motion for summary judgment was heard.  On February 6, 2017, this Court held a lengthy hearing on the final motion for summary judgment and, possibly realizing there were serious problems with Plaintiff's case, continued the trial and gave the parties further time for briefing.  During that hearing, Plaintiff's counsel desperately threw up a series of Hail Mary's, including engaging the Court in a lengthy discussion of whether the performance rights were infringed by the professional musicians, even though Plaintiff knew the only right at issue in this case was a derivative right to create arrangements – not perform them.  As this Court recognized at various points in this case, companies such as BMI and ASCAP handle performance rights.  A week later, the Court held a brief hearing and issued a minute order granting summary judgment because, despite Plaintiff's metaphysical niceties, there was simply no evidence that the Boosters were vicariously or contributorily liable for the choir's song selection and arrangement.  A more detailed order followed.  (Dkt. No. 275.)

True to form, Plaintiff continued to litigate, filing a motion to reconsider the grant of summary judgment against Carroll (by then several months old) because of the text messages and a flyer that was disclosed by a former President of the Boosters that described the choir as performing at "professional" level.  Plaintiff attempted to turn these unrelated documents into an admission that Carroll was not an employee of the School District with regard to the Choir but worked with the Boosters.  The Court's opinion denying this motion can best be summed up by its observation that the "evidence is substantial in quantity, but insubstantial in substance."  (Dkt. No. 302.)

## II.  STANDARD

The Copyright Act, 17 U.S.C. § 505, allows this Court to award attorneys' fees to the prevailing party, and in awarding fees, the Court must determine: (i) which party is the prevailing party on the copyright claims; (ii) whether discretion should be exercised in favor of awarding fees; and (iii) what amount of fees to award, if any.  *Cadkin v. Loose*, 569 F.3d 1142, 1147 (9th Cir. 2009) ("District courts have two tasks in applying § 505: first, deciding whether an award of attorney's fees is appropriate and, second, calculating the amount of the award. District courts have discretion to award attorney's fees to prevailing parties under the Copyright Act, but that discretion is triggered only if the party in fact prevailed on the copyright claim.") (citations omitted).  As a general matter, "[w]here a defendant is the prevailing party in a copyright case, the presumption in favor of awarding fees to the defendant is very strong."  *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1297 (S.D. Fla. 2015).   "[D]efendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement."  *Kirtsaeng v, John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016).

## III.  ARGUMENT

### A.   DEFENDANTS ARE THE "PREVAILING PARTY"

Defendants, the Boosters Club, the Volunteers and their Spouses, are the

4

prevailing party because summary judgment has been granted in Defendants' favor as to all of Plaintiff's claims.  A "prevailing party" is one "in whose favor a judgment is rendered, regardless of the amount of damages awarded [or] one who has been awarded some relief by the court."  *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598 (2001); *Cadkin*, 569 F.3d at 1148 -1149 ("Accordingly, we hold the material alteration test the Supreme Court articulated in *Buckhannon* governs the prevailing party inquiry under § 505 of the Copyright Act"). The key inquiry is whether some court action has created a "material alteration of the legal relationship of the parties." *Buckhannon*, 532 U.S. at 603-604.

For a defendant, the "material alteration" test is satisfied by a favorable judgment.  "[A] defendant is a prevailing party [under § 505] following dismissal of a claim if the plaintiff is judicially precluded from refiling the claim against the defendant in federal court." *Cadkin,* 569 F.3d at 1150.  A summary judgment order is a determination on the merits that cannot later be re-filed. *See Wyatt v. Terhune,* 315 F.3d 1108, 1120 (9th Cir.2003) ("These decisions are based on the general principle that summary judgment is on the merits.") (citations omitted).

## B.   THE COURT SHOULD EXERCISE ITS DISCRETION AND AWARD FEES TO DEFENDANTS

The Court here should award attorneys' fees because the purposes of the Copyright Act would be advanced by such an award, and the discretionary factors have been met. The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act to stimulate artistic creativity. *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir. 1996) (*Fogerty III*).  In exercising its discretion, a court may also be guided by nonexclusive factors that include the "degree of success obtained, frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *Jackson v. Axton*, 25 F.3d 884, 890

(9th Cir. 1994); *Fogerty v. Fantasy,* 510 U.S. 517, 527 n. 19 (1994) (*Fogerty II*); *see also Lieb v. Topstone Indus.,* 788 F.2d 151, 156 (3d Cir.1986).

### 1.   An Award of Fees To Defendants Would Advance The Goal of Stimulating Artistic Creativity

Faithfulness to the purposes of the Copyright Act is the pivotal criterion to be considered when determining an award of fees.  *Fogerty III,* 94 F.3d at 558.  The Copyright Act's "ultimate aim is ... to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151 (1975).  That aim is furthered when defendants "advance a variety of meritorious copyright defenses." *Fogerty II,* 510 U.S. at 527.  A defendant's "contribution to the state of the law in the field of copyright in a case of this magnitude and notoriety" furthers the purpose of the Copyright Act.  *Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013).

"[I]t is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible." *Fogerty II,* 510 U.S. at 527.  Failure to vigorously defend against copyright claims could usher in a "new era of copyright litigation aimed not at promoting expression but at stifling the 'competition' upon which America thrives." *Mattel*, 705 F.3d at 1111 (citations omitted).

Moreover "while courts may take the *Lieb* factors into account, they are 'nonexclusive.' Even so, courts may not rely on the *Lieb* factors if they are not 'faithful to the purposes of the Copyright Act.' Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion." *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir.1996).   Thus, "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright," *Fogerty II,* 510 U.S. at 527.

Plaintiff has sent threatening letters to public school districts all over the country under circumstances very similar to the circumstances here.  Indeed, Plaintiff has boasted that nearly 4000 schools have been required to purchase custom licenses from

Tresóna since 2010.  (Dkt. No. 89-4, Greenburg Decl. ¶50.)  To Defendants'
knowledge, this is the only case that has been vigorously defended against Tresóna.
(Bjorgum Decl., ¶ 3.)  It appears that Defendants here are the only defendants who have
conducted discovery and motion practice that put some limits on Plaintiff's unbridled
litigation of its copyrights.  Because Defendants pursued the litigation, other school
districts and boosters clubs now have some idea of the scope of Plaintiff's copyright
claims, as well as an incentive to actively review issues of standing and ownership.
They can create musical arrangements with less fear.  This is exactly what the
Copyright Act was intended to do.  Schools around the country can now research
copyrights and more easily decide whether to create their own arrangements.

Further, parents and volunteers should be encouraged to help with music
programs, free of fear of claims of vicarious or contributory liability. This in turn will
stimulate artistic creativity by supporting the arts.

### 2.   Defendants Obtained a High Degree of Success

A defendant is entitled to fees if he prevailed on the merits rather than on a
technical defense, such as the statute of limitations, laches, or the copyright registration
requirements.  *Fogerty III*, 94 F.3d at 556.  "Where a plaintiff has obtained excellent
results, his attorney should recover a fully compensatory fee."  *Hensley v. Eckerhart*,
461 U.S. 424, 435 (1983).  "Normally this will encompass all hours reasonably
expended on the litigation, and indeed in some cases of exceptional success an
enhanced award may be justified . . . The result is what matters."  *Id*.

There can be no doubt that Defendants obtained a high degree of success in this
case.  This Court granted summary judgment on the merits to all Defendants as to all of
Plaintiff's claims against them.  The Volunteers' and Spouses' Motion for Summary
Judgment was decided on the merits and granted, dismissing all Volunteers and their
Spouses from the case.  (Dkt. No. 177, n. 1, "The Court's decision is on the merits.  As
a matter of law, the Volunteers cannot be held liable for any of the Boosters Club

potential infringement that occurred before the Volunteers were members of the Boosters Club.")  The Court also granted summary judgment as to all claims against the Boosters Club because there was no evidence of infringement.  (Dkt. No. 275.)  Indeed, the degree of Defendants' success in this case could not be higher.

### 3.   Plaintiff's Claims Against Defendants Were Frivolous

A claim is "frivolous" if it "lacks an arguable basis either in law or in fact." *Nietzke v. Williams*, 490 U.S. 319, 325 (1989).  Nevertheless, an "explicit finding of frivolity or bad faith is not required for the award of attorney's fees under 17 U.S.C. § 505."  *Garcia-Goyco v. Law Environmental Consultants*, 428 F.3d 14, 20 (1st Cir. 2005).  Frivolousness is "one among many considerations" in making a fees determination.  *Berkla v. Corel Corp.*, 302 F.3d 909, 924 (9th Cir. 2002).

Here, Plaintiff knew that its infringement claims against the Volunteers, their Spouses, and the Boosters Club lacked an arguable basis in law or fact.  It is a fact that Defendants were one of the first groups to actively stand up to and litigate against Plaintiff.  (Bjorgum Decl., ¶3.)  Even after losing its claims against Brett Carroll for lack of standing, however, Plaintiff pursued its case against Defendants.  After losing its infringement claims for three of its four songs because Plaintiff did not hold exclusive rights to those songs, Plaintiff limped along with its one remaining song, "Magic," against the Volunteers, their Spouses and the Boosters Club.  Upon realizing its claim against the Spouses was a non-starter, Plaintiff improperly attempted to dismiss them in its opposition to Defendants' Motion for Summary Judgment.[1]  (Dkt. No. 132 at 12, "Under Reynolds, those spouses may therefore now be dismissed . . .")

However, this Court dismissed the Volunteers and their Spouses on the merits because none of them was associated with the Boosters Club at the time of the alleged infringement of "Magic" (a fact Plaintiff could have – and should have – ascertained

---

[1] Under Fed. Rule Civ. Proc. 41(a), an action may be dismissed by a plaintiff only by court order if the defendant has already filed an answer or motion for summary judgment.

before filing its suit in the first place).  Finally, after losing its claim against the Volunteers and their Spouses, Plaintiff still pursued its case against the Boosters Club. Yet, lacking any legal basis for its claim for direct or secondary infringement, the Court dismissed Plaintiff's claim against the Boosters Club. Plaintiff's lawsuit had no arguable basis in law or fact, and it was nothing short of an attempt to bully Defendants into settlement.

### 4.  **Plaintiff's Motivation Weighs In Favor of Awarding Fees**

"[A] court's discretion may be influenced by the plaintiff's culpability in bringing or pursuing the action, but blameworthiness is not a prerequisite to awarding fees to a prevailing defendant." *Fogerty III,* 94 F.3d at 558.  "Where bad faith is present that, too, may affect the size of the award." *Lieb v. Topstone Indus.,* 788 F.2d 151, 156 (3d Cir.1986) citing *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485 (9th Cir. 1984).

Defendants submit that Plaintiff's motivation was to misuse its copyright to strangle competition, thus stifling creativity – not stimulating it.  High school show choirs exist to stimulate creativity and expression in young minds, and by pursuing fees from the fundraising boosters clubs that support show choirs, Plaintiff depletes valuable resources – resources intended to raise funds for future performances.  Plaintiff has sent letters to hundreds of other school districts threatening them with lawsuits, and according to Plaintiff, over 4000 schools have been forced to pay Tresóna licensing fees.  (Dkt. No. 89-4, Greenburg Decl. ¶50.)

Plaintiff initially filed its complaint in the District of Arizona, and after Defendants moved to transfer based on personal jurisdiction, Plaintiffs filed a complaint in the Central District of California. Notwithstanding extensive briefing and declarations from the Board and their Spouses that they had no ties to Arizona, Tresóna *again* filed a complaint in Arizona, but this time in state court.  The Arizona Superior Court dismissed the action based on personal jurisdiction and even invited Defendants

to file a motion for attorneys' fees.  (*See* Bjorgum Decl., Ex. A, at 4.)  Defendants

submit that through all of this litigation, Plaintiff's motivation was to bully Defendants

into paying Tresóna a licensing fee out of fear and complication.

Further evidence of Plaintiff's bad faith is obvious from the pleadings

themselves; Tresóna sued not only members of the Boosters Club's board, but also their

*spouses*.  Clearly, Plaintiff's intent was to bring as many people as possible into the

lawsuit to threaten the personal and community property of individuals who bore no

relationship to the litigation whatsoever.  (*See* Dkt. No. 132 at 12, "The spouses were

sued as co-representatives of the community estate.")

Finally, Plaintiff's motivation based on bad faith and malicious intent is most

evident in Tresóna's personal attacks against Mr. Carroll.  As will be briefed in greater

detail in Mr. Carroll's fee motion, Plaintiff displayed excessive vitriol towards Mr.

Carroll by forwarding text messages obtained in discovery to the School Board for no

other purpose than to retaliate against Mr. Carroll.  (Bjorgum Decl., ¶ 4.)  As a result of

Tresóna's spiteful actions, Mr. Carroll has been placed on administrative leave by the

School Board.  (*Id*.)

In short, Plaintiff's behavior is the exact opposite of "promotion of Progress of

Science and Useful Arts" by providing encouragement to others (*i.e.,* non copyright

holders) "to build freely upon the ideas and information conveyed by a work." *Feist

Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 349-50, 111 S.Ct. 1282, 113 L.Ed.2d

358 (1991).  Plaintiff's threatening and underhanded tactics are worthy of this Court's

attention.

### 5.  Plaintiff's Arguments Were Factually and Legally Unreasonable

The standard for  "objective unreasonableness" is somewhat lower than the

standard for frivolousness. *See Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB

SHX, 2015 WL 1746484, at *11 (C.D. Cal. Mar. 24, 2015). "A claim is objectively

unreasonable where the party advancing it 'should have known from the outset that its

chances of success in this case were slim to none.' " *Id.* (*quoting SOFA Entertainment, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). Courts assess the objective reasonableness of a copyright litigant's claims "both in the factual and in the legal components of the case." *Fogerty II*, 510 U.S. at 534 n.19 (internal quotes omitted). *Frost-Tsuji Architects v. Highway Inn, Inc.,* No. CV 13-00496 SOM/BMK, 2015 WL 5601853, at *5 (D. Haw. Sept. 23, 2015).

After defendant Carroll was dismissed from the case, Plaintiff knew that its claims against the Boosters Club and its board members had little basis in law or fact, but still Plaintiff pursued its claims, forcing Defendants to incur additional fees and costs.  When Plaintiff initially filed its Complaint, Plaintiff alleged that Defendants had infringed 89 songs from 2010 through 2016 (Dkt. No. 1, ¶¶ 43, 44), and pursued claims against Defendants for infringement of four songs (Dkt. No. 1, ¶¶ 56-75, 84-93.)  Over the course of the litigation, Plaintiffs case was whittled down to one remaining song, "Magic." (Dkt. Nos. 1, 135.)

Legally and factually, Plaintiff should have known that its chances of success were slim to none.  Any amount of investigation by Plaintiff would have revealed that Tresóna did not hold the exclusive right to three of the four songs so that Plaintiff lacked standing to sue. (*See* Dkt. No. 135 at 4-5.)  Plaintiff should have known that suing a public school teacher was unlikely to succeed past the qualified immunity defense. (*See Id*. at 13.)  And had Plaintiff conducted any amount of factual investigation, Plaintiff would have discovered that the board members were not on the board when the Burbank High School Show Choir performed the remaining song, "Magic". (*See* Dkt. No. 177 at 1-2.)  Finally, Plaintiff should have known that its legal claims for one song against one last defendant, the Boosters Club, had very little basis in the law.  Indeed, in its briefing and at oral argument, Plaintiff could not delineate how the Boosters Club infringed either directly or secondarily. (*See* Dkt. No. 178 at 22-25.)  Plaintiff's counsel then attempted to engage the Court in a lengthy discussion of

whether the performance rights were infringed by the professional musicians, even though Plaintiff knew the only right at issue in this case was a derivative right to create arrangements – not perform them.  Thus even when Plaintiff's arguments went far afield and outside the scope of the litigation, Plaintiff pursued its legally and factually unreasonable claims wasting Defendants' time and resources.

Finally, an award of fees is supported by the recent case of *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1987 (2016), which recognized the district court's discretion in assessing the merits of the losing party's position.  The Supreme Court stated that "a district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense." *Id.*  That is exactly the case here.  Plaintiff lost standing to assert three of four songs.  It continued to assert infringement against parties who were not even Board members at the relevant time period. Losing that claim, it continued to assert infringement against the Boosters Club, despite the absence of fact that it had any control over song selection.  In other words, this Court can easily decide that Plaintiff's position was unreasonable and became more so as the case continued.

## 6.     The Need To Advance Considerations of Compensation and Deterrence

The need for compensation and deterrence very strongly favors fees in this case. "Under the Copyright Act, the question is whether a successful defense of the action furthered the purposes of the [Copyright] Act, not whether a fee award would do so." *See, e.g., Mattel Inc. v. Walking Mtn. Productions,* 353 F.3d 792, 816 (9th Cir.2003).

Obviously, deterrence weighs in favor of granting fees. Indeed, as one court opined, a prevailing defendant in a copyright case often receives no monetary relief, so deterring frivolous claims weighs strongly in favor of an award of fees to defendants. *Assessment Technlogies v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004); *Boisson*

*v. Banian Ltd.*, 280 F.Supp.2d 10, 20 (E.D.N.Y. 2003) (very strong presumption in favor of award of fees to prevailing defendant who otherwise receives no award).

Defendants' offers to settle the case are particularly relevant here.[2]  Defendants offered several walkaway settlements to Plaintiff with a promise not to seek fees and costs from Plaintiff.  In fact, at every critical turn in the case when it become more evident that Plaintiff had no legal or factual basis for its claims, Defendants offered Plaintiff a walkaway.  (*See* Bjorgum Decl., Exs. B, C, and D.)  Yet, Plaintiff refused to settle, thus causing Defendants to continue to incur attorneys' fees and costs.  An award of fees here would essentially be the only way to compensate Defendants for their wasted time and resources, and the only way to deter Plaintiff from refusing reasonable settlement offers in the future.

**C.   THE COURT SHOULD AWARD DEFENDANTS' ATTORNEYS' FEES IN THE AMOUNT OF $137,929.50 BECAUSE DEFENDANTS' REQUESTED ATTORNEY'S FEES ARE REASONABLE**

Attorneys' fees are calculated by multiplying reasonable hours by a reasonable billing rate – the "lodestar" amount that is presumptively reasonable.  *Cairns*, 292 F.3d at 1158.  A court may adjust the lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975).  *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).  The *Kerr* factors are:  (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances,

---

[2] Settlement negotiations may be considered for purposes of deciding a reasonable attorney fee award.  *See Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *In re Kekauoha-Alisa*, 674 F.3d 1083, 1094 (9th Cir. 2012); *A.D. v. California Highway Patrol*, 712 F.3d 446, 460-461 (9th Cir. 2013).

(8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 69-70. "The court need not consider all ... factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Kessler v. Assocs. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n. 1 (9th Cir. 1981).

The prevailing market rate in the community is indicative of an attorney's reasonable hourly rate. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987); *Fractional Villas, Inc. v. Rodgers,* 2009 WL 1226982 *2 (S.D. Cal. 2009) (applying *Jordan* to copyright case.). The fee applicant need only produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. *Jordan* at 815 F.2d. 1262. Fee awards in other cases are reasonable evidence of prevailing market rates. *Brighton Collectibles, Inc. v. Coldwater Creek Inc.* 2009 WL 160235 *4 (S.D. Cal. 2009) (noting other cases in Southern District of California have allowed attorneys' fees of over $500/hour, and finding rates for Plaintiff's counsel ranging from $125/hour to $625/hour, with an *average* rate of $367/hour, reasonable.)

As to time expended, counsel need only indicate the time expended in a reasonable manner and can meet this burden "by simply listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (denial of attorney's fees an abuse of discretion where attorney submission of time in broad categories based on "summary of time slips"); *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) ("[p]laintiff's counsel ... is not required to record in great detail how each minute of his time was expended" but need only "identify the general subject matter of [their] time expenditures."). Once the applicant submits appropriate evidence supporting its fee application the burden shifts

to the opposing party to submit evidence challenging the accuracy and reasonableness of the fees.  *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992).

### 1.    Defendants' Counsel's Rates Are Reasonable

Plaintiff's trial counsel billed at a rate of $325.00 per hour for both lead trial counsel Eric Bjorgum and firm partners Vincent Pollmeier and Marc Karish.  Karish & Bjorgum, PC charges below market rates for intellectual property litigation in Los Angeles.  Wherever possible, Karish & Bjorgum used the services of Courtney Ballard, and experienced attorney skilled at brief writing, at a rate of $220 per hour.  Karish & Bjorgum has been in existence over seven years, and it was created partially in response to the high billable rates of many intellectual property lawyers.  There is a great need for experienced intellectual property litigation attorneys with rates that are below the prevailing rates of large firms.   A rate of $325 per hour is reasonable for lawyers of this experience.  (Bjorgum Decl., ¶¶ 8 – 11 and Exh E.)

Also instructive is information regarding the billable rates of similarly situated lawyers.  According the annual survey of American Intellectual Property Law Association, for 2015, the mean (average) billable rate for an intellectual property partner in Los Angeles was $561/hr.  (Bjorgum Decl., Ex. E.)  The mean rate for the lowest quartile was $405/hr.  According to another leading survey, the CEB/TyMetrix survey, the median rate for an intellectual property partner in Los Angeles is $575/hr.  (Bjorgum Decl., Ex. F.)  Thus, Defendants' attorney's rate of $325 is reasonable.

### 2.    Defendants' Counsel Expended Reasonable Hours on this Matter

Defendants' trial counsel has provided this Court with copies of the actual invoices sent to Defendants.  Bjorgum served as lead trial counsel in this case and was the attorney primarily responsible for this case for Defendants.  His work included reviewing the case when it initially arrived, preparing and responding to all discovery, preparing for, taking and defending depositions and drafting the majority of the papers

on the cross-motions for summary judgment.  Bjorgum and/or his partners billed a total of 378.3 hours to this matter.  (Bjorgum Decl., Ex. F.)  Bjorgum's associate, Courtney Ballard, billed a total of 59.25 hours to the case.  (*Id.*)  Ballard prepared legal memoranda and conducted legal research in connection with briefing on the case. Counsel's staff billed 17.7 hours to the case.  (*Id.*)  Copies of Defendants' counsel's invoices are attached as Exhibit F to the Bjorgum Declaration; however, below is a summary breakdown of Defendant's Counsel's fees:

| Fee Type | Hours | Rates | Total |
|----------|-------|-------|-------|
| Partner Hours | 378.30 | $325/hour | $122,947.50 |
| Associate Hours | 59.25 | $220/hour | $13,035 |
| Staff Hours | 17.7 | $110/hour | $1947 |
| **Total Fees** | | | **$137,929.50** |

The presumptively reasonable lodestar amount for this case, therefore, is $137,929.50.

### 3.  The Lodestar Amount Should Be Augmented

This Court should augment the requested fee and cost amount following analysis of the twelve *Kerr* factors because Defendants' counsel's fee request is very low considering the matter nearly proceeded to trial.  *Kerr*, 526 F.2d at 69-70.

(1)  The time and labor required:  The time and labor billed in this case was very reasonable given the complexity of the issues, the number of defendants, and how far the case proceeded before the Court ordered judgment in Defendants' favor.

(2)  The novelty and difficulty of the questions:  This case involved complex questions of standing and direct and/or secondary copyright infringement.

(3)  The skill requisite to perform the legal service properly:  Defending a copyright infringement suit requires a high degree of skill.  This case involved issues of

venue, personal jurisdiction, standing, and direct and secondary copyright infringement, and Defendants' counsel briefed and argued all of the issues in this case.

(4)     The preclusion of other employment by the attorney due to acceptance of the case:  Defendants' firm is small.  This case took up a substantial amount of time in 2016 and 2017.  In a firm with five attorneys and two primary litigators, engagement by even one attorney means that substantial opportunities are lost elsewhere.

(5)     The customary fee:  The customary fee for even a simple copyright is much higher than what Defendants' counsel collected.  Defendant includes as Exhibit E to the Bjorgum declaration of copy of the relevant pages from the American Intellectual Property Association's 2015 Report on Economic Activity.  This report contains detailed survey information for intellectual property practice costs and fees.

(6)     Whether the fee is fixed or contingent.  The fees in this case were hourly.

(7)     Time limitations imposed by the client or the circumstances.  This factor is not applicable.

(8)     The amount involved and the results obtained.  The amount involved could have been very large if Plaintiff had prevailed, as the fees sought from the Burbank High School Vocal Association would have swallowed a large portion of the Boosters Club budget otherwise dedicated to the high school students' performances and travel. The result was definitive for Defendants.

(9)     The experience, reputation, and ability of the attorneys.  As shown above, Defendant's counsel has considerable experience in federal court and intellectual property litigation.

(10)    The "undesirability" of the case.  This case was initially undesirable because the Burbank High School Vocal Association is a fund raising booster club with

limited resources.  Defendants' counsel had to be conscientious about costs and fees throughout the duration of the case.

(11)  <u>The nature and length of the professional relationship with the client</u>.   This is the first engagement Karish & Bjorgum has had with Burbank High School Music Association.

(12)  <u>Awards in similar cases</u>.  As shown above, in *Brighton Collectibles,* 2009 WL 160235 at *4 the court noted that other cases in Southern District of California have allowed attorneys' fees of over $500/hour, and finding rates for Plaintiff's counsel ranging from $125/hour to $625/hour, with an *average* rate of $367/hour, reasonable.

For all the foregoing reasons, the lodestar amount is reasonable and, if anything, should be augmented.

**Defendants Should Also Be Awarded Costs Unrecoverable In A Bill of Costs**

The Ninth Circuit has specifically held that costs not recoverable under 28 U.S.C. § 1920 may be recovered under the Copyright Act.  *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 885 (9th Cir. 2005) ("Thus we hold that district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under [17 U.S.C. § 505]").  Here, Defendant incurred $9,841.20 in expert fees, $187.50 in outside counsel costs, $516.34 in deposition travel costs, and $148.75 in network litigation costs, for a total of $10,693.79 in unrecoverable costs. (Bjorgum Decl., Exs. G, H.)  The Court should further award Defendants their unrecoverable costs.

## IV.    CONCLUSION

Defendants prevailed in this copyright infringement lawsuit, vindicating important rights, furthering the purposes of the Copyright Act.  As the prevailing party, Defendants respectfully request this court award total attorney's fees in the amount of $137,929.50 and unrecoverable costs in the amount of $10,693.79 for the reasons set

forth above.

Dated:   June 29, 2017          KARSH & BJORGUM, PC


                                        _____/s/ A. Eric Bjorgum_____
                                        A. Eric Bjorgum
                                        Attorney for Defendants Burbank High School
                                        Vocal Music Association; Ellie Stockwell and
                                        John Doe Stockwell, a married couple; Marianne
                                        Winters and John Doe Winters, a married couple;
                                        Geneva Tarandek and John Doe Tarandek, a
                                        married couple; Lorna Consoli and John Doe
                                        Consoli, a married couple; Charles Rodriguez
                                        and Jane doe Rodriguez, a married couple