Brad A. Denton, #016454
Brad@DentonPeterson.com



1930 N. ARBOLEDA ROAD, SUITE 200
MESA, ARIZONA 85213
TELEPHONE: (480) 325-9900
FACSIMILE: (480) 325-9901
*Attorneys for Tresóna Multimedia, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Tresóna Multimedia, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Burbank High School Vocal Music Association; Brett Carroll and John Doe Carroll, a married couple;  Ellie Stockwell and John Doe Stockwell, a married couple; Marianne Winters and John Doe Winters, a married couple; Geneva Tarandek and John Doe Tarandek, a married couple; Lorna Consoli and John Doe Consoli, a married couple; Charles Rodriguez and Jane Doe Rodriguez, a married couple,<br><br>Defendants. | Case No. 2:16-cv-04781-SVW-FFM<br><br>**PLAINTIFF TRESÓNA MULTIMEDIA, LLC'S OPPOSITION TO ASSOCIATION DEFENDANTS' MOTION FOR ATTORNEY'S FEES**<br><br>(Assigned to the Honorable Stephen V. Wilson) |
| Brett Carroll, an individual and employee of the Burbank Unified School District,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Josh Greene, and individual; Squareplay, Inc. dba Squareplay Entertainments, a California corporation; and Does 1-10,<br><br>Third-Party Defendant. | |

i

1

2

## **Table of Contents**

Table of Contents.................................................................................................ii

Table of Authorities ............................................................................................ iii

Memorandum of Points and Authorities ............................................................ 1

   I.     Introduction and Background. ............................................................... 1

   II.    Attorneys' fees should not be awarded to the Association. ...........................3

      A.   The degree of success factor is neutral because it does not implicate the
      ultimate interests of copyright. ............................................................... 5

      B.   Tresóna's positions were not frivolous...........................................9

      C.   It was the Association, not Tresóna, who manifested bad faith...................12

      D.   Tresóna's positions were reasonable. ...............................................18

      E.   Need for compensation and deterrence favors Tresóna. ........................19

   III.   Even if fees are awarded, the Association seeks too much...........................21

   IV.   Conclusion. ..................................................................................22

DENTON PETERSON
A PROFESSIONAL CORPORATION
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

DP | DENTON PETERSON,

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

# Table of Authorities

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ...........................12

*Actuate Corp. v. Aon Corp.*, 2012 WL 3627595 (N.D.Cal. 2012) ..............................20

*Bisson–Dath v. Sony Computer Entm't Am. Inc.,* 2012 WL 3025402 (N.D.Cal. 2012) ...................................................................................................................................11

*BWP Media USA Inc. v. Rich Kids Clothing Co., LLC* ...........................................5, 6, 9

*Epikhin v. Game Insight N. Am.*, 2016 WL 1258690 (N.D.Cal. 2016) .......................19

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996) .......................................passim

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("*Fogerty I*"). ........................................3

*Glass v. Sue,* 2011 WL 561028 (C.D.Cal. Feb.8, 2011) ................................................11

*Karam v. City of Burbank,* 352 F.3d 1188 (9th Cir.2003) ............................................11

*Kerr v. Screen Actors' Guild*, 526 F.2d 67 (9th Cir. 1976) ......................................23

*Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S.Ct. 1979 (2016).............................3, 4, 19

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.,*2014 WL 1724478 (N.D.Cal. 2014) ............................................................................................................................passim

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.,* 795 F.3d 997 (9th Cir. 2015) ......6, 7

*Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484 (C.D.Cal. 2015) ...............11, 19

*Reynolds and Reynolds Co. v. Universal Forms, Labels & Systems, Inc.*, 965 F.Supp. 1392 (C.D.Cal. 1997) ................................................................................................8, 11

*Skidmore v. Led Zeppelin*, CV15-03462 RGK (AGRx), 2016 WL 6674985 (Aug. 8, 2016).................................................................................................................................5

*Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137 (9th Cir. 2008)....................12

*Twentieth Centry Music Corp. v. Aiken*, 422 U.S. 151 (1975) ....................................10

*VMG Salsoul, LLC v. Ciccone*, CV12-05967-BRO (CWx) (C.D.Cal. Sep. 23, 2016)...5

*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) ..............................13

**Statutes**

17 U.S.C. § 107 ............................................................................................9, 10

17 U.S.C. § 505 ....................................................................................................3

Cal. Corp. Code § 5231 .....................................................................................18

Cal. Corp. Code § 5239 .....................................................................................18

Cal. Corp. Code § 5047.5 ..................................................................................18

**Rules**

FRCP 40 ...............................................................................................................2

Rule 41(d) ............................................................................................................2

## Memorandum of Points and Authorities

This Court should deny the motion for fees sought by the Burbank High School Vocal Music Association, its board members, and spouses (collectively the "Association"). The Association only prevailed in this matter on tangential issues that are unrelated to the substantive infringement that was asserted. Without a decision on the substantive copyright issues, the show choir program supported by the Association and led by Carroll continues to use unlicensed arrangements of copyrighted music.[1] An award of attorneys' fees will thus only fuel their continued infringement.

## I.  Introduction and Background.

The Association supports a show choir program led by Brett Carroll, which has infringed hundreds of copyrighted works over the past several years by commissioning the creation of music arrangements and the sheet music containing those arrangements of copyrighted music, which are by definition of the Copyright Act derivative works of those copyrighted songs, and duplicating and distributing those custom arrangements to choir members and professional musicians for learning, performing, and competing, all without obtaining necessary permission from the rightsholders.[2] The Association supports the show choir program with a large budget, more than $400,000 in 2014-15.[3]

Tresóna is a company that issues several types of licenses on behalf of the vast majority of both large and small rightsholders. From Tresóna alone, at least 6,000 schools have purchased more than 50,399 custom arrangement licenses since 2011.[4]

This case involved four works. The individual board members were dismissed after three of the works were dismissed (on standing grounds) on the basis that the

---

[1] Greenburg declaration ¶ 5.
[2] Greenburg declaration ¶ 4; Exhibit A.
[3] Tresóna's Motion for Partial Summary Judgment dated December 19, 2016 (Docs. 130, 130-1, pp. 3860-3884).
[4] Greenburg declaration ¶ 6.

DENTON PETERSON
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

1  named board members were not on the board at the when the remaining work was

2  infringed. The Booster Club itself was dismissed as to the remaining work, the court

3  finding no evidence the Booster Club was involved in infringement. Judgment was

4  entered on June 15, 2017.

5       The opening "Introduction" and "Facts" sections of the Association's Motion

6  make several key untrue statements that bear pointing out:

7  - The Association asserts that it brought a motion for fees in this Court "under

8  FRCP 40" and "at the invitation of the Arizona state court."[5]  The truth is

9  that the motion was brought under Rule 41(d)[6], and that the Arizona court

10  never invited the Association to file it. In fact, the Association's Motion

11  lacks any citation to the Arizona court's alleged "invitation" to file the

12  (unsuccessful) Rule 41(d) motion.

13  - The Association asserts that when originally filed in Arizona District Court,

14  this case sought damages for intentional interference with economic

15  advantage "because copyright infringement interferes with Plaintiff's

16  business model." The truth is that the intentional interference claim was

17  based in large part on defendants' campaign against Tresona that contained

18  falsehoods about Tresona, its principal Mark Greenburg, and copyright law.[7]

19  - The Association asserts that Tresona's motion for reconsideration was based

20  only on documents "that described the choir as performing at 'professional'

21

22  _____

23  [5] Motion for Attorney's Fees Pursuant to 17 U.S.C. § 505 (Doc. 309) ("Association Fee Motion"), p. 2. The Association appears confused by the procedural history,

24  because the no motion was ever filed in the Arizona court pursuant to FRCP 40, which relates to scheduling trials.

25  [6] *See* Defendants' Motion for Costs and to Stay the Proceedings Under Federal Rules

26  of Civil Procedure Rule 41(d) (Doc. 38).

27  [7] *See e.g.*, Exhibit L (Complaint filed in Maricopa County Superior Court) ¶49-50, 62-65.

28

DP | DENTON PETERSON
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

level [*sic*]."[8] But the truth is that the motion for reconsideration was based on many issues besides that one.[9] These misstatements should not distract the Court from the actual legal standard that applies to this Motion.

## II.      Attorneys' fees should not be awarded to the Association.

This Court should not award the Association attorney's fees. 17 U.S.C. § 505 states that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." The Supreme Court has expressly rejected the British Rule (where "counsel fees are regularly awarded to the prevailing party"[10]) and acknowledged that "Congress legislates against the strong background of the American Rule"[11] (where "parties are to bear their own attorney's fees"[12]). "The word 'may' clearly connotes discretion."[13]

The Supreme Court recently provided guidance relating to attorney fee awards in copyright litigation in *Kirtsaeng v. John Wiley & Sons, Inc.*[14] The Supreme Court explained that "a district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment."[15] Further, the Court noted it has approved "several nonexclusive factors to inform a court's fee-shifting decisions: frivolousness, motivation, objective reasonableness, and the need

---

[8] Association Fee Motion at 4.
[9] *See* Tresóna's Motion for Reconsideration (Doc. 278) ("Motion for Reconsideration") and Reply in Support of Motion for Reconsideration (Doc. 288).
[10] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("*Fogerty I*").
[11] *Id.*
[12] *Id.*
[13] *Id*
[14] 136 S.Ct. 1979 (2016).
[15] *Id.* at 1985 (internal quotations and citations omitted).

DENTON PETERSON
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

3

in particular circumstances to advance considerations of compensation and deterrence."[16]

The Supreme Court held that a trial court should "give substantial weight to the objective reasonableness of the losing party's position."[17] The Court explained that "[c]ourts every day see reasonable defenses that ultimately fail (just as they see reasonable claims that come to nothing); in this context, as in any other, they are capable of distinguishing between those defenses (or claims) and the objectively unreasonable variety."[18] The Court continued, "[I]f some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion."[19]

The Court also clarified that the other elements must still be considered. "All of that said, objective reasonableness can be only an important factor in assessing fee applications—not the controlling one."[20] "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals."[21]

Applying these factors, two recent Central District of California cases have denied awards of attorney's fees to prevailing parties. In *Skidmore v. Led Zeppelin*,[22] Defendant prevailed, but its request for attorneys' fees and costs was denied.[23] And in

---

[16] *Id.* (internal quotations and citations omitted).
[17] *Id.* at 1983.
[18] *Id.* at 1988.
[19] *Id.*
[20] *Id.*
[21] *Id.* at 1989.
[22] CV15-03462 RGK (AGRx).
[23] *Skidmore v. Led Zeppelin*, CV15-03462 RGK (AGRx), 2016 WL 6674985, at *1 (Aug. 8, 2016).

*VMG Salsoul, LLC v. Ciccone*,[24] the Court reversed its own earlier determination that fees should be awarded to the prevailing defendant.

In this case as in those, although the prevailing defendant was dismissed from the action, the circumstances dictate that the Court should deny the motion for fees.

### A.   The degree of success factor is neutral because it does not implicate the ultimate interests of copyright.

Under the first factor, the Court weighs the party's degree of success in a lawsuit. This factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense.[25] Indeed, the Ninth Circuit has specifically acknowledged that attorneys' fees awards are less appropriate in cases like this, where copyright defendants have not "prevailed on the merits rather than on a technical defense."[26]

In *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*,[27] the Western District of Washington found that the degree of success was tempered when a defendant did not prevail on the merits, but rather as a result of Rule 37 sanctions against the plaintiff. The court stated, "RKCC overstates its argument in contending its defenses resulted in a complete success on the merits."[28] The court reasoned:

> In this case, given the imposition of Rule 37 sanctions, the Court never made a side-by-side comparison between BWP's copyrighted images and the allegedly infringing content on RKCC's website as depicted on any document or digital file containing viewable images. Therefore, while RKCC's ultimate success in this matter does favor an award of attorneys' fees, the weight afforded this factor is tempered with consideration of the

---

[24] CV12-05967-BRO (CWx) (C.D.Cal. Sep. 23, 2016).

[25] *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996) ("*Fogerty II*").

[26] *Id*. at 560.

[27] 103 F.Supp.3d 1242 (W.D. Wash. 2015).

[28] *Id*. at 1246.

1   fact that that success resulted from discovery-related violations, rather than
2   a determination on the merits of the underlying claims.[29]

3   In *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,[30] the Northern District of
4   California denied fees to the prevailing defendant, which had prevailed on the issue of
5   plaintiff's standing.[31] Relating to the degree of success factor, the court reasoned:

6       First, while Wiley undoubtedly succeeded in this action, the Court finds the
        degree of success is mitigated by the fact that no substantive ruling
7       regarding the underlying question of infringement was made. Wiley remains
        subject to suit by each of the individual photographers on whose behalf
8       Minden sought to assert claims. While the degree of success in this case is
        not insubstantial (in that *Minden* cannot assert similar claims against Wiley
9       in any federal court based on the underlying assignment or agency
10      agreements at issue in this case), the fact that the merits of the underlying
        infringement claims remain untouched reduces the significance of this
11      factor. *See Fogerty,* 94 F.3d at 560 (noting that the Copyright Act does not
        import the "British Rule" regarding fees through the back door, in part,
12      because "copyright defendants do not always reach the merits, prevailing
13      instead on technical defenses").[32]

14  As in *Minden*, the substantive copyright issues in this case "remain untouched."
15  For example, Tresóna raised the issue of fair use in its December 19, 2016 motion for
16  partial summary judgment,[33] to which the Association responded on December 30,
17  2016.[34] Further, the Association raised fair use in its own motion for summary
18  judgment, filed on January 9, 2017.[35] But the Court never ruled on fair use—or any
19
20
21  [29] *Id.* (*citing Fogerty II,* 94 F.3d at 556, 560).
22  [30] 2014 WL 1724478 (N.D.Cal. 2014), (*"Minden I"*).
23  [31] The court's underlying ruling relating to standing was later overturned, *see Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) ("*Minden II*"),
24  but this decision was not at issue in that appeal.
25  [32] *Id.* at *6 (internal citations omitted).
    [33] Doc. 130. Hereafter called "Tresóna MPSJ."
26  [34] *See* Association's Response to Tresóna MPSJ (Doc. 146).
27  [35] *See* Association's Motion for Summary Judgment (Doc. 162)("Association MSJ II").
28

6

1   other substantive copyright issue—electing instead to dismiss on non-substantive

2   grounds raised by the Association.

3       First, the Association argued that the board members' spouses should be

4   dismissed because the complaint lacked any allegations against them.[36] Of course, as

5   previously noted, the spouses were included as co-representatives of the community

6   estate,[37] which had been approved by this Court.[38] This Court had held that when a

7   spouse is "named solely as a community representative, in order to bind the

8   community," then the spouse "may opt not to participate in the litigation, and will be

9   dismissed as essentially a nominal defendant upon the non-debtor spouse's request."[39]

10      Further, the Association argued the board members should be dismissed on non-

11  substantive grounds. On December 22, 2016, in the context of a motion for summary

12  judgment filed by Brett Carroll, this Court ruled that Tresóna lacked standing as to

13  three of the four works at issue in the case.[40] In the Association's Reply in Support of

14  its Motion for Summary Judgment filed on December 23, 2016, the Association

15  argued that because the board members were not on the board in 2011 (when the

16  remaining song, Magic, was infringed), they should be dismissed from the action.[41]

17  This Court granted Tresóna an opportunity to file a Sur-Reply on the issue, which

18  Tresóna did on January 11, 2017.[42] Tresóna conducted depositions of the board

19  members on January 10, 2017 (after the Association's Reply and one day before

---

[36] *See* Association's Motion for Summary Judgment (Doc. 113)("Association MSJ I"), pp. 11-12.

[37] *See* Tresóna's Response to Association MSJ I (Doc. 132) pp. 11-12.

[38] *Reynolds and Reynolds Co. v. Universal Forms, Labels & Systems, Inc.*, 965 F.Supp. 1392, 1396-97 (C.D.Cal. 1997).

[39] *Id*. at 1397.

[40] *See* Civil Minutes dated December 22, 2016 (Doc. 135), pp. 4-6.

[41] *See* Association's Reply in Support of Motion for Summary Judgment (Doc. 140) p. 3.

[42] *See* Tresóna's Sur-Reply to Motion for Summary Judgment (Doc. 167).

Tresóna's Sur-Reply), which confirmed that the board members were not on the board in 2011.[43] Therefore, Tresóna's Sur-Reply did not oppose their dismissal. Accordingly, on January 11, 2017, this Court dismissed the board members and their spouses.[44] In doing so, the Court specifically declined ruling on the statutory immunity grounds raised by the Association: "The Volunteers requested the Court to reach the merits of their immunity claim because 'Plaintiff in this case appears to be more than ready to file suit on new songs and claims. The court declines to do so."[45]

Additionally, the Booster Club was dismissed without the Court addressing the substantive infringement issues raised by the parties. On January 9, 2017 the Booster Club filed a motion or summary judgment primarily arguing that no infringement had occurred because the fair use doctrine set forth in 17 U.S.C. § 107 applied. In addition to the fair use argument, the Booster Club argued that it could not be liable because it had not performed Magic, it did not know about the alleged infringement in 2011, and the Booster Club had no authority to pick songs or arrangers.[46]

Despite argument by Tresóna to the contrary, the Court ultimately agreed with the Booster Club on the Association's latter argument, finding no evidence that the Booster Club had knowledge of infringement or the ability to control it.[47] Again, the Court elected not to address the substantive copyright issues advanced by the parties: "The Court does not consider whether fair use would have applied."[48]

Thus, like *BWP Media* and *Minden I*, the rulings in this case (including the dismissal of Carroll) did not address the substantive copyright infringement alleged in

---

[43] However, the board members were on the board when the other three works were infringed.

[44] *See* Civil Minutes dated January 11, 2017 (Doc. 177).

[45] *Id*. at 1-2 (internal quotations and citations omitted).

[46] *See* Association MSJ II, pp. 11-12.

[47] *See* Civil Minutes dated Feb. 22, 2017, pp. 3-10.

[48] *Id*. at 1.

the case, including the existence of prima facie copyright infringement and whether Defendants could invoke the fair use defense under 17 U.S.C. § 107. Although the issues were briefed, the Court did not need to, nor did it, resolve those substantive copyright issues because the non-substantive rulings made them moot. Thus, as explained by the *Minden I* trial court judge, "the fact that the merits of the underlying infringement claims remain untouched reduces the significance of this factor."[49]

The Court should thus ignore the Association's arguments that an award of fees would advance the goals of the Copyright Act.[50] While Tresóna agrees that the Copyright Act's "ultimate aim is … to stimulate artistic creativity for the general public good,"[51] nothing in the Court's rulings in favor of the Association provide any "demarcation" that furthers the purposes of the Copyright Act. Thus, the Association's argument that "other school districts and boosters clubs now have some idea of the scope of Plaintiff's copyright claims, as well as incentive to actively review issues of standing and ownership" are incorrect. Nothing about the Court's rulings provides the copyright world any additional guidance regarding the copyright infringement claims made in this case. Thus, this factor is, at most, neutral.

### B.    Tresóna's positions were not frivolous.

"A claim is not frivolous under the Copyright Act merely because it is unsuccessful."[52] Rather, "a case is deemed frivolous only when the result is obvious or the arguments are wholly without merit."[53]

---

[49] *Id*.
[50] Association Fee Motion, pp. 6-7.
[51] Association Fee Motion, p. 6 (*citing Twentieth Centry Music Corp. v. Aiken*, 422 U.S. 151 (1975).
[52] *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *8 (C.D.Cal. 2015) (internal quotations omitted) (citing *Bisson–Dath v. Sony Computer Entm't Am. Inc.*, 2012 WL 3025402, at *2 (N.D.Cal. 2012)).

9

Athough the substantive issue of infringement was never reached, Tresóna's positions were reasonable and not frivolous. The Association incorrectly argues that "Plaintiff's knew that its infringement claims against the Volunteers, their Spouses, and the Boosters Club lacked an arguable basis in law or fact."[54]

First, as noted above, the spouses were included as co-representatives of the community estate, a practice expressly allowed in California.[55] Additionally, as noted above, the board members were on the board of the booster club in later years when when (I've Had) The Time of My Life, Hotel California, and Don't Phunk With My Heart were performed. However, as noted in Tresóna's Response to Carroll's Fee Motion (filed with this Response), those three works were dismissed due to this Court's rulings relating to standing. And, as further noted in the Carroll Fee Motion briefing, the standing issue was based on *Sybersound Records, Inc. v. UAV Corp.*,[56] which has been widely criticized and which Tresóna intends to challenge. If *Sybersound* is overruled, the three works will be reinstated and all those that participated in the infringement are proper parties to an infringement action.

Further, although the Court ultimately disagreed, the claims against the Booster Club were reasonable. Tresóna primarily argued vicarious liability against the Booster Club. Vicarious liability applies when a defendant "has the right and ability to surpervise the infringing activity and also has a direct financial interest in such activities."[57] Tresóna argued that the Booster Club derived a direct financial benefit

---

[53] *Id*. (internal quotations omitted) (citing *Glass v. Sue,* No. CV 09–8570–RGK SHX, 2011 WL 561028, at *3 (C.D.Cal. Feb.8, 2011), citing *Karam v. City of Burbank,* 352 F.3d 1188, 1195 (9th Cir.2003)).

[54] Association Fee Motion, p. 8.

[55] *Reynolds and Reynolds Co.*, 965 F.Supp. at 1396-97.

[56] 517 F.3d 1137 (9th Cir. 2008).

[57] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)(internal quotations omitted).

DENTON PETERSON
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

1    from the creation and use of Magic because the Booster Club hosted several

2    fundraisers each year—at least two in the 2010-2011 school year—which required an

3    admission fee and which generated funds for the Booster Club to fund the outside

4    choirs' costly competition schedules.[58] Tresóna further argued that the Booster Club

5    had sufficient control because the Booster Club organized and hosted the fundraisers,

6    and that, as the producer of the event, the Booster Club had the right and ability to get

7    licensing (as the other high school in its district was doing[59]), or stop the infringement

8    by not holding the fundraisers. Tresóna further argued that the Booster Club could

9    have refused to pay for the infringing arrangement, which would have prevented it

10   from being created in the first place.[60] Thus, Tresóna argued that there were at least

11   sufficient facts in existence that a factfinder could find that the Booster Club satisfied

12   the elements for vicarious infringement. It was reasonable for Tresóna to expect that at

13   a minimum, a material issue of fact existed that would require the matter to be

14   resolved by the fact-finder.[61] While the Court ultimately ruled otherwise, it was at

15   least reasonable for Tresóna to argue that the Booster Club had a direct financial

16   interest (it had clearly made money off the arrangement of Magic) and that it had the

17   right and ability to control the infringement.

18

19

20

21

22   [58] *See* Tresóna's Response to Association's Motion for Summary Judgment dated Jan. 16, 2017 (Doc. 178), pp. 24-25

23   [59] Tresóna MPSJ, p. 10, n. 57.

24   [60] *See* Tresóna's Response to Association's Motion for Summary Judgment dated Jan. 16, 2017 (Doc. 178), p. 25.

25   [61] *See VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) ("If a plaintiff

26   has a claim that hinges on disputed facts sufficient to reach a jury, that claim

27   necessarily is reasonable because a jury might decide the case in the plaintiff's favor").

28

### C.   It was the Association, not Tresóna, who manifested bad faith.

Under this factor, a court determines whether a party demonstrated a bad faith motivation in litigating the case.[62]

#### i.   Tresóna did not have bad motivation.

The Association's claims about Tresóna's bad motivation lack evidence.

For example, the Association argues, without any support whatsoever, that it "submits" that Tresóna's "motivation was to misuse its copyright to strangle competition, thus stifling creativity – not stimulating it."[63] It also argues, again without support, that Tresóna has "sent letters to hundreds of other school districts threatening them with lawsuits, and according to Plaintiff, over 4000 schools have been forced to pay Tresóna licensing fees."[64] These false facts are put forward as justification for a false assertion—that Tresóna's activities are hurting the market. The opposite is true.

Tresóna is a licensing agency, authorized by the vast majority of music publishers to license their music. It does so through a website known as the Licensing Exchange, which facilitates the process for both publishers and applicants. Tresóna has licensed more than 50,399 custom arrangements for at least 6,000 different schools since 2011. Thus, Tresóna's business model is to provide a forum for and facilitate the licensing process between rightsholders and licensees.[65]

Tresóna works closely with publishers. When a school is violating copyright law, publishers authorize Tresóna to address the issues and attempt to resolve them. Tresóna's motivation in doing so is to help publishers protect their rights under the

---

[62] *Fogerty II*, 94 F.3d at 558.
[63] Association Fee Motion, p. 9.
[64] *Id*.
[65] Greenburg declaration ¶ 6.

1  Copyright Act.[66] The vast majority of infringers immediately acknowledge the law's

2  application, and the rightsholders release their claims on very favorable terms with the

3  infringers.[67] The Association's characterization of this process as being negative or

4  "stifling creativity" is absolutely incorrect. First, the rightsholders Tresóna represents

5  have the right to address unlicensed uses of their copyrighted works. In fact, in almost

6  all cases the process is amicable because the process clarifies the application of the

7  law and the licensing process. Most licensees are happy they can use the copyrighted

8  works for their purposes without apprehension. Indeed, the other high school in the

9  Burbank Unified School District, John Burroughs High School, licenses all custom

10  arrangements its show choirs use.[68] Thus, Tresóna's services stimulate creativity by

11  facilitating, streamlining, and reducing the cost of the lawful arranging of copyrighted

12  works for show choirs and other ensembles.[69] Indeed, for the four songs at issue, the

13  licensing fees would have totaled approximately $2,000.[70]

14      The remainder of the Association's arguments on this factor are simply

15  irrelevant to Tresóna's motivation in the litigation. The Arizona case (Tresóna is an

16  Arizona limited liability company), which asserted that the defendants were

17  wrongfully interfering with Tresóna's business expectancy through lies about

18  licensing and Tresóna has nothing to do with whether this copyright action was

19  justified.

20      Further, the Association's argument that Tresóna retaliated against Carroll by

21  filing an administrative complaint is unfounded, unsubstantiated, and wrong.[71] The

22  documents included with the complaint clearly reference appalling conduct and

23

24  [66] Greenburg declaration ¶ 7.

25  [67] Greenburg declaration ¶ 8.
   [68] Greenburg declaration ¶ 9.

26  [69] Greenburg declaration ¶ 10.

27  [70] Greenburg declaration ¶ 11.
   [71] Greenburg declaration ¶ 12.

28

DP DENTON PETERSON
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

1   statements by Carroll that relate to Carroll's fitness to teach children.[72] Clearly

2   Carroll's statements therein caused concern, as Carroll was placed on administrative

3   leave.[73] And the Association's reliance on the administrative complaint to get an

4   award of attorney's fees shows bad motivation and misconduct on the Association's

5   behalf. Tresóna did not bring up the administrative complaint, the defendants did. The

6   complaint was filed because Carroll's communications included evidence he was

7   misusing public monies and had made numerous inappropriate comments, including

8   (but not limited to) vulgar sexual comments about students, inappropriate drug use,

9   and inappropriate comments about race and disability.[74] Mr. Greenburg is permitted by

10  law to bring such information to the appropriate authorities, and he is protected against

11  retaliation for doing so.[75] Carroll cannot retaliate through the Association. Thus, the

12  Association's use of the administrative complaint to bolster its claim for attorneys'

13  fees in this copyright case is inappropriate and illegal.

14        Tresóna does not want to harm any program—indeed, its business structure is

15  intentionally designed to make it cheaper and easier for school programs to afford

16  proper licensing so that they can continue to flourish.[76]

17              **ii.    The Association's bad-faith refusal to talk about infringement
18                      before the lawsuit was filed.**

19        Unlike Tresóna, the Association had bad motivation. When the infringement

20  was discovered, Tresóna was authorized to address the issues on behalf of the

21  rightsholders. As a result, Tresóna reached out to Carroll and the District.[77] Ellie

22

23

24  ─────────────────────
    [72] Motion for Reconsideration, Exhibit B.

25  [73] Greenburg declaration ¶ 14.
    [74] Motion for Reconsideration, Exhibit B.

26  [75] *See* 28 C.F.R. § 42.107(e); *see also* 34 C.F.R. § 106.71.

27  [76] Greenburg declaration ¶ 13.
    [77] For example, Tresóna sent Carroll the letter attached as Exhibit A.

28

DENTON PETERSON, ·····
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DP

Stockwell, then-president of the Booster Club, was also copied on some of the communications sent by Tresóna. But Tresóna was completely ignored.[78]

### iii.    The Association's bad-faith attacks on Tresona.

Although Carroll admitted that he knew he was infringing ████████████ ██████████████████████████████████████████████[79]), Carroll and the Association endeavored to harm Tresóna's business and reputation instead of responding to Tresóna.

For example, Carroll wrote to Josh Greene that he intentionally tried to harm Tresóna's reputation:



[80]

And the Association participated in the scheme. On March 2, 2015, Carroll and Greene texted about the licensing issues facing the program. To counter Tresóna, Brett Carroll states that he is '████████████████████████████████████████ █████"[81] He then explains that Ellie (Defendant Ellie Stockwell, then-board president of the booster club) ████████████████████████████████ ████████████████████████████.''[82]

Thus, without even evaluating whether licensing was required or responding to Tresona's requests to talk, Carroll and the Association began a direct targeted

[78] Greenburg declaration ¶ 15.
[79] Exhibit B.
[80] Exhibit C.
[81] Exhibit D.
[82] Exhibit D.

DP | DENTON PETERSON
1930 N. ARROLEDA ROAD, SUITE 200
MESA, AZ 85213

1   campaign against Tresóna. From long before this action began, it was the defendants'

2   bad motivations that created this dispute.

### iv.   The Association's bad-faith promise to purchase licenses.

3

4   This bad motivation is further demonstrated by the conduct of the Association

5   and its lawyer, Eric Bjorgum. On January 8, 2016, and after some negotiating,

6   Bjorgum wrote to counsel for Tresóna, "the Board has decided to take the required

7   licenses from Tresona and enter into a settlement agreement. Please send me a draft

8   agreement at your earliest convenience."[83] Accordingly, Tresóna's counsel prepared a

9   settlement agreement and sent it to Bjorgum. However, Bjorgum delayed in

10  responding, despite follow up.[84] Finally, on March 21, 2016—over two months later—

11  Tresóna's counsel followed up with Bjorgum. He ignored his prior agreement to get

12  the licenses he had conceded were "required," and responded, "There had been a lot of

13  rumors circulating that Tresóna was going out of business, or being investigated by

14  the news media. I thought maybe they just packed up their sheet music tent and moved

15  on."[85] Either the Association and its lawyer were never really serious about engaging

16  with Tresóna, or made a false agreement to string Tresóna along.

### v.   The Association's bad-faith concealment of records.

17

18  The Association later deceived this Court about important records in the case.

19  For example, after repeated requests for minutes from Booster Club meetings for

20  2010-2011, the Association's attorney Mr. Bjorgum finally emailed, "We don't have

21  minutes that far back."[86] The truth was that at least three sets of minutes from that time

22  frame existed on CHARMS, where the Booster Club could have easily downloaded

23

24

25  [83] Exhibit E; Denton declaration ¶ 5.

26  [84]  Denton declaration ¶ 6.

27  [85] Exhibit F; Denton declaration ¶ 7.
    [86] *See* Motion for Reconsideration , Exhibit E.

28

DP | DENTON PETERSON
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

them.[87] When Tresóna learned about them and asked Mr. Bjorgum to confirm their authenticity,[88] he feigned ignorance, stating, "I don't know what these are. How would I be able to object to them? … Maybe send a subpoena to your source."[89] Lying about the existence of relevant records, then falsely saying "I don't know what these are," is exactly the kind of bad-faith behavior that should not be rewarded with attorneys' fees.

**vi.   The Association's bad-faith lie that it was a corporation.**

In addition, the Booster Club lied about its corporate status. It repeatedly and untruthfully described itself as a corporation to this Court[90] and to Tresóna,[91] and withheld discoverable documents that would reveal the lie.[92] Relying on these falsehoods, the Booster Club asked this Court to dismiss its members as volunteers under Cal. Corp. Code §§ 5047.5, 5231, and 5239, which statutes only apply to nonprofit <u>corporations</u>.[93]

**vii.   The Association's bad-faith concealment of who actually paid its attorneys' fees.**

Finally, Mr. Bjorgum has refused to say whether any of his clients actually paid the attorneys' fees in this case. It appears they did not. Mr. Bjorgum redacted the

---

[87] *See* Motion for Reconsideration , Exhibit C.

[88] *See* Motion for Reconsideration, Exhibit F.

[89] *See* Motion for Reconsideration, Exhibit G.

[90] Booster Club's president Willard Woods asserted that "the Boosters Club is a non-profit corporation" (Doc. 113-11 at ¶ 2); Booster Club asserted that "the booster club is a 501(c)(3) corporation" (Doc. 140 at page 7).

[91] In discovery responses the Booster Club wrote, "The Boosters are a section 501(c)(3) non-profit corporation formed in California in 2004" (attached as Exhibit A to Docket 173 at page 5).

[92] *See* Tresóna's discovery requests, attached as Exhibit J, at 7. The Booster Club subsequently promised to provide those formation documents, but never did so. *See* Booster Club discovery responses, attached as Exhibit K, at 12.

[93] Association MSJ I, pp. 9-11.

17

invoices to conceal the client name on them.[94] When asked to reveal the redacted information on July 19, 2017, Mr. Bjorgum first said it was "attorney client privilege and work product"[95] and asked: "And you need to know about that why?"[96]

Tresona responded, "It's relevant who paid the fees. Did any parent ever pay any of the fees?"[97] Mr. Bjorgum responded, "I'll get back to you tomorrow [July 20]."[98]  As of July 24, 2017, he has still not responded, so it appears that none of his clients actually paid the fees (which were apparently paid by an insurer). As at other times in this case, however, Mr. Bjorgum's evasive behavior forced both sides to waste attorneys' fees on what should have been a straightforward issue.

### D.    Tresóna's positions were reasonable.

The Association repeats some of its arguments relating to frivolousness for the "unreasonableness" factor. "[A] claim is objectively unreasonable where the party advancing it should have known from the outset that its chances of success in this case were slim to none."[99] "The mere fact that a party lost cannot establish his objective unreasonability."[100] And "if some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion."[101] Again, the Association advances no argument other than that Tresóna lost. That is not sufficient.

New arguments advanced for this factor are that Tresóna "should have known" that Carroll was going to prevail on the doctrine of qualified immunity and that

---

[94] *See* Association Fee Motion, Exhibit F.
[95] Exhibit I, p. 3.
[96] *Id*.
[97] *Id*. at 2.
[98] *Id*.
[99] *Giganews*, 2015 WL 1746484 at *11 (quoting *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013)).
[100] *Epikhin v. Game Insight N. Am.*, 2016 WL 1258690, at * 5 (N.D.Cal. 2016) (internal quotations omitted).
[101] *Kirtsaeng*, 136 S.Ct. at 1988.

Tresóna lacked standing.[102] Of course, the Association advanced neither of these arguments (Carroll did), so it is odd that the Association would make this claim. To the extent this Court is willing to consider such arguments in support of the Association's Motion for Attorney's Fees, Tresóna adopts and incorporates here the arguments made relating to qualified immunity and standing in its Response to Carroll's Motion for Attorney's Fees filed concurrently herewith.

Further, the Association's argument that Tresona could have discovered that the board members were not on the board when the "Show Choir performed the remaining song, 'Magic,'" misses the point. The board members were included because they were on the board during later infringements, and those works were dismissed on standing grounds. Had the standing ruling come down differently, the board members would not have been dismissed.

### E.    Need for compensation and deterrence favors Tresóna.

"Considerations of compensation and deterrence weigh in favor of granting attorney's fees when they advance the primary objective of the Copyright Act and do not impose an inequitable burden on an impecunious plaintiff."[103] Because the primary objectives of the Copyright Act were not even addressed in this matter, considerations of deterrence and compensation weigh in favor of Tresóna.

As noted above, the Association defendants were dismissed on grounds that did not address Tresóna's substantive copyright infringement allegations. Indeed, between both Carroll and the Association, none of the copyright defenses they advanced were evaluated or approved by the Court. Thus this Court never considered any objectives of the Copyright Act.

---

[102] Association Fee Motion, pp. 10-12.
[103] *Actuate Corp. v. Aon Corp.*, No. C 10-05750 WHA, 2012 WL 3627595, at *2 (N.D.Cal. 2012) (*citing Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996)).

19

Additionally, an award of fees would curtail potentially meritorious claims. In light of the Association's mischaracterizations of Tresóna's business and motivations, the Court's analysis in *Minden I* is particularly instructive. The defendant had prevailed in that case on standing, and made similar arguments regarding that plaintiff that are precisely on point in this case:

> Finally, the Court finds that awarding attorneys' fees in this case would not further the purposes of the Copyright Act. Wiley argues that deterrence is needed to prevent parties like Minden from impermissibly aggregating claims and bringing meritless, and expensive, suits. The Court disagrees. Wiley seeks to brand Minden with the odious "Copyright Troll" label. The Court finds such hyperbole unhelpful and slightly disingenuous. Minden is not an entity which exists solely for the purpose of acquiring rights to pursue litigation. Rather, as the agency agreements in this case show, they are a legitimate third-party licensing agent with longstanding ties to major photographers. Wiley itself recognizes this by its undisputed business dealings with Minden. That Minden attempted to aggregate the claims of its clients who have allegedly suffered at Wiley's hands is not, on its own, worthy of scorn. While the burden of defending frivolous and objectively unreasonable litigation may be deleterious to the objectives of the Copyright Act, <u>it is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful.</u> Nor can it be said that the business model of Minden is contrary to the purposes of the Copyright Act; there is value in facilitating the efficient licensing of legitimate copyright holders.[104]

Because Tresóna likewise "facilitate[s] the efficient licensing of legitimate copyright holders," Tresóna's business is not contrary to the purposes of the Copyright Act. And awarding fees here—like in *Minden I*—would "deter litigants from bring potentially meritorious claims, even though those claims may be ultimately unsuccessful."[105]

---

[104] *Minden I*, 2014 WL 1724478, at *8 (internal quotations and citations omitted) (emphasis added).
[105] *Id*.

DENTON PETERSON
1930 N. ARROYO ROAD, SUITE 200
MESA, AZ 85213

Further, the Association's arguments relating to its purported settlement offers are irrelevant to this factor. Tresóna and the defendants attempted settlement at various points throughout the process, and the parties simply were not able to reach a concensus on material provisions. Indeed, if any settlement discussions should be considered in deciding whether to award fees, it is the settlement discussions that occurred before litigation began. As noted above, after Bjorgum told Tresóna the Association would settle by "taking the required licenses," the Association delayed its response over two months, and then reneged.

This type of unprofessional conduct by the Association's counsel occurred regularly throughout the litigation. Thus, not only does this conduct related to the "motivation" factor, it relates to the "litigation misconduct" factor.

Additionally, the compensation factor does not apply here. The Association defendants did not pay for their representation—as shown previously, it appears that their defense was paid for by the Burbank District's insurance company. As a result, the Association does not have a need for compensation. Indeed, if the Association were awarded fees, it would receive a windfall. Accordingly, this factor favors Tresóna.

### III. Even if fees are awarded, the Association seeks too much.

As a preliminary matter, the Association does not fully substantiate its request. Attached as Exhibit G is a spreadsheet of all dollar amounts set forth in the Association's invoices. The total of all amounts set forth in those billing entries is $116,234.00, $21,695.50 less than the $137,929.50 requested in the Association's Fee Motion. Because the Association has only submitted at most $116,234.00 in billings, an award (if one is permitted at all) should not exceed that amount.

Further, this Court already denied a portion of the costs requested. On September 13, 2016, Defendants requested an award of attorneys' fees and costs pursuant to F.R.C.P. 41(d) in the total amount of $16,683.11 arising out of a separate

1  case between the parties in the District of Arizona. After a thorough analysis, this

2  Court denied those attorneys' fees and costs to Defendants.[106] The Association is

3  asking for them again. This Court should deny them again.

4      In addition, the Association makes a cursory request that its attorneys' fees be

5  augmented. But the only case cited in support of that request, *Kerr v. Screen Actors'*

6  *Guild*, 526 F.2d 67 (9th Cir. 1976), never so much as mentions augmenting of fees.

7  Nor does the Association's brief give any other law in support of its argument that it

8  ought to be awarded more than the fees incurred.

9      Last, the Association requests $5,353.50 in fees for work done in pursuing a

10 third-party claim against Josh Greene and Squareplay, Inc. Exhibit H sets forth all

11 such requests. If this Court awards fees, it should not include those fees the

12 Association incurred to sue Josh Greene.

13

14 **IV.    Conclusion.**

15      While the Association prevailed, it prevailed on grounds that do not advance the

16 Copyright Act. Weighing the relevant factors, the Association should not be awarded

17 attorneys' fees.

18

19

20 Dated: July 24, 2017          **DENTON PETERSON, P.C.**

21

22                              /s/ Brad A. Denton

23                              Brad A. Denton
                                1930 N. Arboleda Road, Suite 200
24                              Mesa, AZ  85213
                                *Attorneys for Plaintiff, Tresóna Multimedia, LLC*
25

26

27 ───────────────
[106] *See* Civil Minutes dated October 31, 2016 (Doc. 63).

28
                                     22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system which will send notification of said filing to the CM/ECF registrants.

A. Eric Bjorgum
Karish & Bjorgum, P.C.
119 E. Union Street, Suite B
Pasadena, CA 91103
*Attorney for Defendants Burbank High School Vocal Music Association,*
*Ellie Stockwell, Marianne Winters, Geneva Tarandek, Lorna Consoli,*
*Charles Rodriguez and respective spouses*

Aaron B. Craig
Atikinson, Andleson, Loya, Ruud & Romo
12800 Center Court Drive, Suite 300
Cerritos, CA 90703
*Attorney for Defendant / Third-Party Plaintiff Brett Carroll and respective spouse*

Christiane C. Kinney
LECLAIRRYAN, LLP
725 S. Figueroa Street, Suite 350
Los Angeles, CA 90017
*Attorneys for Third Party Defendants Josh Greene and Squareplay, Inc.*

William D. Chapman
Cadden & Fuller, L.L.P.
114 Pacifica, Suite 450
Irvine, CA 92618
*Attorney for Plaintiff*

/s/ Lindsey Rice

23